Larence Earl PETERSON, Appellant,

v.

The STATE of Texas, Appellee.

No. 08–84–00115–CR.

Court of Appeals of Texas,
El Paso.

Nov. 28, 1984.

John W. Cliff, Jr., Law Offices of Smith & Cliff, P.C., Odessa, for appellant.

James L. Rex, County Atty., Andrews, for appellee.

Before STEPHEN F. PRESLAR, C.J., and WARD and OSBORN, JJ.

OPINION

OSBORN, Justice.

This is an appeal from a conviction for burglary of a habitation. The jury assessed punishment at fifty years imprisonment. We affirm.

Appellant contends that the court erred in denying his request for a continuance and in forcing him to proceed to trial with counsel not of his own choosing. Appellant was indicted for burglary of a habitation and spent fourteen months in jail awaiting trial. He retained an attorney who represented him for over one year, including bond reduction proceedings, parole revocation resulting from this charge and discovery. At the end of March, 1983, a trial setting was issued for April 12. On Tuesday, April 5, counsel notified Appellant of a plea bargain offer by the State of fifteen years imprisonment. Dissatisfied with this offer, Appellant immediately rejected the plea bargain and discharged his attorney. Counsel notified the prosecuting attorney. On April 12, Appellant appeared in court without counsel. Previously retained counsel appeared at the request of the prosecuting attorney. Appellant expressed his desire to obtain other counsel and asked for a two-week postponement. The court refused. Counsel advised the court that based on his discharge on April 5, he had not prepared for trial and asked for two weeks

to prepare. This was also denied, and Appellant proceeded to trial with the retained attorney he had previously discharged. The same attorney was then appointed to present this appeal, without apparent objection by the Appellant.

The State contends that the judgment should be upheld on the basis of *Ex parte Windham*, 634 S.W.2d 718 (Tex.Crim.App. 1982). In that opinion, the Court of Criminal Appeals suggested nine primary factors to be considered in reviewing the propriety of a similar action in the trial court. In light of the nine factors, the *Windham* case presented a more compelling basis for reversal than this record.

In *Windham*, the Appellant sought only a two-day delay, as opposed to two weeks. Neither case involved any prior continuances granted at the behest of the defendant. In *Windham*, the trial counsel had less experience than the defendant's attorney of record and had not reviewed the facts of the case with the client. He had only been involved in filing a motion to quash, a motion in limine and the motion for continuance which was the subject of Court of Criminal Appeals review. In this case, trial counsel had been handling the case throughout the fourteen months prior to trial. He had represented the Appellant's brother in a separate trial of the same offense and had represented Appellant in a parole revocation based upon the alleged burglary. Thus, counsel in this case was far better prepared to proceed to trial than his counterpart in *Windham*. For the above reasons, the fourth factor (availability of other competent counsel) weighs in favor of the State. The fifth factor (convenience or inconvenience to witnesses, opposing counsel and the court) is not clearly resolved by the record. We note, however, that during the week following discharge of retained counsel, Appellant took no steps to hire other counsel or advise the court of his situation. While most of the State's witnesses were local residents, one was from another county. Furthermore, advance scheduling of crowded court dockets means that a two-week continuance frequently results in actual greater delay.

The sixth factor involves an appraisal of whether the delay is for legitimate or contrived reasons. Appellant was dissatisfied with the plea bargain of fifteen years imprisonment and sought to discharge counsel as a result. While we do not suggest that this was a contrived reason for delay, we do find it significantly less than impressive in assessing the propriety of the court's action. We further note at this point that Appellant was seeking to drop the attorney who had been representing him for over one year, while *Windham* was merely trying to go to trial with counsel who had been handling his case for a comparable period of time. In terms of complexity of the case, this trial presented one moderately complex legal issue (addressed below) within an otherwise simple factual or evidentiary problem. Appellant was arrested inside a Department of Public Safety Officer's residence at night, having forced entry through a back door. No identifiable harm has resulted from the court's action, placing the eighth factor in the State's column.

The final factor expressed in *Windham* is the quality of legal representation actually provided. In light of the interests involved, we have carefully scrutinized the trial proceedings and the evidence. The State presented testimony of various witnesses including law enforcement personnel and one of the codefendants. Tom Finley, a former DPS narcotics investigator, stated that he was contacted by one of his established informants, Kenneth Albritton, who advised him that several individuals from Odessa were planning to visit Andrews to burglarize a home in search of gold. No target had been selected. Finley conceived of setting up a controlled situation in which a safe residence would be "provided" for the burglary, free of weapons and any danger to civilians. Law enforcement personnel in Andrews selected the home of DPS Officer Barnes, who consented to its use. All weapons and DPS uniforms were removed. Finley then relayed the address to his informant for "spoon-feeding" to the burglars. On the

night of January 27, 1982, members of various law enforcement agencies surrounded the house. At 9:05 p.m., the three burglars arrived at the residence in a truck driven by Albritton. Albritton and John Peterson waited in the truck. Appellant and J.P. Lowry went to the rear of the house and forced entry through a back door. After a few minutes, the trap was sprung. Appellant and Lowry were arrested at the scene. Albritton and John Peterson drove away but were "apprehended" later. Lowry testified on behalf of the State. Appellant testified that he and Lowry simply went to the house at Albritton's suggestion expecting to participate in a crap or poker game. Although Appellant had three dice in his pocket, the explanation was at odds with the forced entry and sum total of less than two dollars between the two intruders. At punishment, the State introduced penitentiary packets demonstrating Appellant's four prior felony convictions for delivery of heroin, with sentences ranging from eleven to fifteen years.

We find only two noticeable lapses on counsel's part during trial. One was a failure to object to a sidebar remark of disbelief on the part of the prosecutor concluding the cross-examination of Appellant as to his gambling explanation for entry. Second was a failure to object to the suggestion of an extraneous offense by Deputy Sheriff Farmer. The officers had been informed that the subjects were armed. A pat-down revealed no weapons. A pistol was then located in the refrigerator. It was not present prior to the burglary. To this extent, the pistol evidence was admissible as part of the res gestae of the offense. *Albrecht v. State,* 486 S.W.2d 97 (Tex.Crim. App.1972). Farmer went on to relate, however, that subsequent investigation disclosed that the gun had been taken in an earlier Odessa burglary, and that it was ultimately returned to its owner. This was not only improper hearsay, but also irrelevant to the offense being tried. Nonetheless, no further evidence was offered with regard to which burglar had introduced the weapon to Barnes' house, Lowry or Appel-

lant (despite the fact that both testified). In addition, the jury did learn that Lowry was awaiting trial in Odessa for burglary. No other connection between Appellant and the Odessa burglary/pistol theft was presented. We conclude that these isolated instances of failure to object, viewing the record as a whole, do not amount to ineffective assistance of counsel under the "reasonably effective" standard expressed in *Simmons v. State,* 629 S.W.2d 38 (Tex. Crim.App.1981) and *Passmore v. State,* 617 S.W.2d 682 (Tex.Crim.App.1981). Counsel otherwise properly objected to hearsay and effectively cross-examined the State's witnesses. In fact, he effectively sought to impeach Lowry by demonstrating that he had a prior conviction for burglary and filed a false affidavit with his plea for probation under his indictment for the present offense, asserting no prior convictions. He also brought out the pending burglary charge against Lowry in Odessa. Finally, counsel did develop at trial a critical question of consent raised by the manner in which the burglary trap was set by the officers in this case. He did move for a directed verdict on the basis of consent by Barnes to the entry into his house. The issue is not reurged on appeal and we ultimately conclude that the evidence was sufficient to support a finding of no effective consent. The issue is far from frivolous, however, and thus is a further indication of counsel's attentive skill in representing Appellant at trial.

In an age of "sting" and decoy operations by law enforcement agencies, the present technique is of interest in testing the extent of police involvement providing criminals the rope to hang themselves. The issue here was not entrapment. Even if it had been, Appellant's denial of guilt would have precluded submission of such an issue to the jury. The issue is whether the controlled scenario in effect resulted in consent to entry by Barnes, relayed through Finley and Albritton. Clearly, the criminal intent to burglarize some dwelling originated with Appellant, his brother and Lowry. Rather than providing a tempting

**400**

decoy, however, here the police actually provided an address to the burglars. Of course, Tex.Penal Code Ann. secs. 1.07(a)(12)(D) and 30.02(a)(1)(Vernon 1974) exclude consent to entry from being "effective" if solely given to detect the commission of an offense. For a similar example of police conduct, this Court had to reach back to *Jarrott v. State,* 1 S.W.2d 619 (Tex.Crim.App.1927). There, an informant came to the police with information concerning a proposal he had received from a car thief operating in the area. The thief was planning to look for a 1925 Ford coupe. Officer Griffin provided his own comparable vehicle, leaving the parking lights on, the key in the ignition, and concealing himself in the rear. The vehicle was left in the area the thief was apparently planning to scour. The informant was advised of these arrangements and accompanied the thief to the scene. The Texas Commission of Appeals upheld the conviction (opinion approved by the Court of Criminal appeals), although Judge Hawkins reflected that "[t]he facts of this case are so unique, an exact precedent is not likely to be discovered."

Apart from police conduct, the consent issue we have examined is not without more recent precedent. In *Brown v. State,* 576 S.W.2d 820 (Tex.Crim.App.1978), the defendant was convicted of aggravated rape. The evidence reflected that he abducted two women, intending to rape the younger one. The older woman "volunteered" to replace the younger victim. On appeal, the issue was one of consent by the older female. The Court of Criminal Appeals held that:

> The fact that the victim "volunteered" could be interpreted by the trial court not as consent to have sexual intercourse, but as an effort to prevent the rape of her companion.

*Id,* at 823. By analogy, Appellant and his companions had already determined to burglarize some home in Andrews. By providing a safer target than some other citizen's house, the police did not instigate the offense or effectively consent to the offense. Consequently, while the trial development

of this issue is a mark in counsel's favor, his failure to reurge it on appeal does not amount to ineffective assistance, since ultimately the legal effect of the police technique was not one of effective consent and non-guilt.

On the basis of the procedural history of this case and the factors expressed in *Windham,* Ground of Error No. One is overruled.

The judgment is affirmed.