

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-11-00056-CR

GUADALUPE TRINIDAD CANTU, JR.                    APPELLANT

V.

THE STATE OF TEXAS                               STATE

----------

FROM THE 355TH DISTRICT COURT OF HOOD COUNTY

----------

## MEMORANDUM OPINION[1]

----------

### I. INTRODUCTION

Appellant Guadalupe Trinidad Cantu, Jr. appeals his convictions for three counts of aggravated assault with a deadly weapon.[2] In seven points, Cantu contends that he was denied his right to counsel, that the trial court erred by

---

[1]See Tex. R. App. P. 47.4.

[2]See Tex. Penal Code §§ 22.02(a)(2), (b)(1) (West 2011).

excusing certain veniremembers, and that the trial court erred by allowing certain testimony in evidence at trial. We will affirm.

## II. BACKGROUND

Cantu and his wife Jane were in the process of separating, when because of Cantu's violent and harassing behavior, Jane fled from Mission, Texas, to Granbury, Texas, with the couple's two children on August 15, 2009. Ten days later, Jane also got a temporary protective order, which became final on October 15, 2009.

On the evening of November 27, 2009, in Granbury, Cantu raced his vehicle in front of Jane, forcing her to come to a stop. Cantu stepped out of his vehicle, reached behind his back, pulled out a gun, and began firing at the car with Jane and the children inside. While Jane crouched in the front seat, Jane's son managed to put the car in reverse, and Jane stepped on the gas and was able to flee the scene while calling 9-1-1 for help. Later that evening, investigators recovered fourteen shell casings from the scene of the shooting. Seven bullets had pierced Jane's car, "in the hood, the front bumper, and . . . the windshield." The Hildalgo County Sheriff's Office arrested Cantu on November 30, 2009.

On the day of trial, and significant to Cantu's points on appeal, the following colloquy took place:

> THE COURT: All right. CR11491, State of Texas versus [Cantu]. [Cantu], come to the counsel table, please.

2

This case is being called for trial. Of course, I'll take judicial notice of all prior proceedings in this matter, the date of indictment, that is, March 3, 2010, a series of attorneys that have been appointed or hired by this defendant to represent him, including Andrew Ottaway, Daniel Webb, Charles Grantham, Andrew Ottaway, Charles Grantham, and the various orders of substitution that this Court signed for counsel, with the final one being -- having been signed November -- excuse me -- December 21, 2010, allowing Mr. Grantham to substitute in as retained counsel for this defendant. And this case is set for jury trial this day, January 24, 2011, and jury selection is about to commence. The State has announced ready, the defendant not ready, so I'll hear from you about that, Mr. Grantham.

MR. GRANTHAM: Your Honor, [Cantu] informed me last week that he was getting another attorney and he -- he -- he wouldn't need me. And then on --

THE COURT: Do you have that another attorney here, [Cantu]?

DEFENDANT: No, sir. The thing is that I didn't remove him, my parents removed him.

THE COURT: I just wanted to know whether you had the other lawyer here, ready to go to trial.

DEFENDANT: Not yet, sir.

THE COURT: All right. Go ahead.

MR. GRANTHAM: And then on I believe it was Friday, his father called me, he had talked to the defendant, and had told me that his son told him to tell me that he doesn't need me, if he has to have a lawyer, he'll represent himself. And --

THE COURT: [Cantu], are you prepared to represent yourself here today?

DEFENDANT: Yes, sir.

THE COURT: Are you a lawyer?

3

DEFENDANT:     No, sir.

THE COURT:     All right.  You are not licensed by the Texas Supreme Court to practice law?

DEFENDANT:     That is correct.

THE COURT:     You've never been licensed to practice law by the Texas Supreme Court, is that correct?

DEFENDANT:     That is correct.

THE COURT:     Or the Supreme Court in any other state?

DEFENDANT:     No, sir.

THE COURT:     I admonish you, sir, that the representation of yourself by you would be extremely difficult.  Have you ever studied law?

DEFENDANT:     Half a year of college, sir.

THE COURT:     Do what?

DEFENDANT:     Just half a year of college basis, not really --

THE COURT:     Have you ever studied law in a law school, an accredited law school in the United States?

DEFENDANT:     No, Your Honor.

THE COURT:     All right.  I admonish you again that for you to try to represent yourself would be an extremely difficult thing for you to do.  Do you know anything about the Texas Code of Criminal Procedure?

DEFENDANT:     No, sir.

THE COURT:     Have you ever read or studied the Texas Code of Criminal Procedure?

DEFENDANT:     No, sir.

4

THE COURT: Have you ever studied or read the Texas Rules of Evidence?

DEFENDANT: Yes, sir.

THE COURT: Have you ever studied or read the Texas Penal Code?

DEFENDANT: Yes, sir.

THE COURT: You have studied and read the entire Texas Penal Code?

DEFENDANT: Not the entire code.

THE COURT: Well, I admonish you, again, sir, that to represent yourself would be probably a disaster for you to attempt to do that, because as I -- I'm taking judicial notice of the fact that, from what you've told me, you have no formal legal training.

DEFENDANT: That is correct.

THE COURT: Have you ever worked in a lawyer's office?

DEFENDANT: No, sir.

THE COURT: Are you a paralegal or have you ever been certified as a paralegal?

DEFENDANT: No, sir.

THE COURT: I admonish you, again, that to represent yourself would be probably, again, disastrous for you, because you have no legal training.

DEFENDANT: That is correct.

THE COURT: Now. I'll let you continue, Mr. Grantham. Do you have something else you want to say? Go ahead.

5

MR. GRANTHAM: Your Honor, I would like to place on the record that, in talking to [Cantu], I passed on to him the plea bargain offer from the State of 40 years, and he told me he would not take that, would not accept that. I did ask him if I could -- if he would authorize me to try to negotiate maybe a lesser plea bargain, and he said, "No." So -- but he's aware of the plea bargain offer, but I was not able to try to negotiate anything better than that. He -- he -- he -- he seems to be aware of a lot of things, him talking to me. In fact, a lot of our conversation was mostly him talking to me. So I advised him that last week that I wouldn't think the Court would let me out, if I wanted out, and -- and if he had another lawyer willing to come in, that I don't think he would grant that lawyer a continuance to get ready, that the lawyer would have to come in apace, ready to go to trial this week.

The -- the prior attorney that I took out, Mr. Ottaway, seems to be a competent attorney and has indicated that if the Court would appoint him as a standby attorney, he would help [Cantu].

THE COURT: All right. [Cantu], is it your desire to terminate the employment of Mr. Grantham?

DEFENDANT: That is correct.

THE COURT: And is it your desire, in effect, to represent yourself? Because this case is going to trial.

DEFENDANT: Yes, I am aware.

THE COURT: Do you understand that?

DEFENDANT: I am ready to continue jury trial.

THE COURT: Pardon me?

DEFENDANT: I am willing to go back towards going to jury trial.

THE COURT: All right. Sir, of course, under the law, you have the right to represent yourself, but you will be held to the same standards that a licensed attorney in the State of Texas under -- by the Texas Supreme Court would be held to in -- in the trial of this

case. It will not lessen your responsibility, the fact that you are a layperson.

DEFENDANT:     Yes, sir.

THE COURT:     Do you understand that?

DEFENDANT:     Yes, sir.

THE COURT:     And I admonish you of this. You are charged with aggravated assault, a second degree felony offense, and there has also been a notice of enhancement filed with this court, and, therefore, if you are found guilty and it's proven true that you were previously convicted of a felony offense, you face punishment of confinement in the Institutional Division of Texas Department of Criminal Justice for life or for any term of not less than five years nor more than 99 years, and, in addition, you can be fined up to $10,000. Do you understand --

DEFENDANT:     Yes, sir.

THE COURT:     -- the range of punishment for the offense?

DEFENDANT:     Yes, Your Honor.

THE COURT:     And knowing that's the range of punishment that you face, that is, up to life in the penitentiary, --

DEFENDANT:     Yes, Your Honor.

THE COURT:     -- you still want to represent yourself?

DEFENDANT:     Yes, Your Honor. Until further notice, until the other attorney step[s] in, we're ready to go to jury trial.

THE COURT:     Well, give me [the] name of the other attorney, I'll call his name or her name right now and see if they're here and haven't responded. What's that person's name?

DEFENDANT:     My father was supposed to contact Garry Lewellen.

7

THE COURT: And is Mr. Lewellen present?

THE COURT: All right. Go ahead.

(Pause)

DEFENDANT: He was supposed to contact me, see how much the fee was to retain him, until -- have him stand by me, represent me and go to jury trial.

THE COURT: All right. I'll order, then, Mr. Grantham, that you are allowed to withdraw from this case. And [Cantu], I will allow you to represent yourself before this court and in this case.

DEFENDANT: Yes, Your Honor.

THE COURT: Got that?

DEFENDANT: Yes, sir.

[THE COURT:] I'll appoint Mr. Ottaway as standby counsel. I will note that Mr. Ottaway, you've been in this case, it looks like, twice before. You were originally appointed by the Court to represent this defendant December 4, 2009, over a year ago, and then you were retained counsel, apparently, at some point during the course of that, thereafter.

MR. OTTAWAY: Yes, Judge. I was originally appointed, went through all the discovery, went to the jail, showed the videos to the gentleman, and then he decided to go with Mr. Webb. I took my file to Mr. Webb, went over the case with Mr. Webb, I helped him transition in. Mr. Webb withdrew, and I think I got it back from there, and I got the file back from Mr. Webb.

When Mr. Grantham came in -- and I spent a little time with Mr. Webb -- with Mr. Grantham, but not much, and then I was in it again, and, of course, I had the file myself, and then when Mr. Grantham substituted in again, I spoke with him on the phone, I never met him, but I have kind of a rough working strategy outlined all the way through the thing, so I'm ready to be standby counsel. I've done it before.

MR. CHRISTIAN: Your Honor, may we approach?

8

THE COURT:     You may.

(Off-the-record discussion at bench)

THE COURT:     All right.  Mr. Ottaway, are you willing to undertake standby counsel for [Cantu]?

MR. OTTAWAY:   Yes, I've done it for other people.  It's -- it's fine.

THE COURT:     All right, [Cantu].  Of course, that does not relieve you of the responsibility to conduct this trial in your own behalf.  You are representing yourself.  Mr. Ottaway is simply there to answer any questions that you might have as we go through the trial.

DEFENDANT:     Yes, Your Honor.

THE COURT:     And in that respect, to answer and give you whatever information that you inquire about.  Otherwise, he will simply be there and sit there with you through the trial as you conduct the trial, that is, the jury selection, the opening statements, the examination of witnesses, the cross examination of witnesses, the reviewing of the Court's charge and determining whether you have any objections thereto, legally or otherwise, and then the final summations and response to any questions that the jury might have while they're deliberating.  All of that is your responsibility.  Do you understand that?

DEFENDANT:     Yes, Your Honor.

THE COURT:     All right. Mr. Grantham, you are excused.

MR. GRANTHAM: Thank you.

The trial court proceeded to trial that day and Cantu represented himself throughout the trial.  A jury found Cantu guilty of three counts of aggravated assault with a deadly weapon.  After Cantu pleaded "not true" to an enhancement

9

paragraph, the trial court sentenced Cantu to life in prison on each count, with the sentences to run concurrently. This appeal followed.

## III. DISCUSSION

### A. Cantu's Rights to Counsel and Self-Representation

In his first point, Cantu alleges that he was denied his rights to due process and due course of law because he did not knowingly and voluntarily waive his right to have counsel present at trial. Specifically, Cantu argues that the trial court failed to explain the dangers of self-representation, coerced him into proceeding without an attorney, and failed to obtain a written waiver of his right to counsel.

In all criminal prosecutions in which an accused may be punished by imprisonment, the accused has the right to assistance of counsel for his defense. U.S. Const. amends. VI, XIV; Tex. Code Crim. Proc. Ann. art. 1.05 (West 2005); *see Faretta v. California*, 422 U.S. 806, 807, 95 S. Ct. 2525, 2527 (1975); *Collier v. State*, 959 S.W.2d 621, 625 (Tex. Crim. App. 1997), *cert. denied*, 525 U.S. 929 (1998). In lieu of being represented by counsel, however, a defendant also has a Sixth Amendment right to prosecute his own legal defense. *Faretta*, 422 U.S. at 818–21, 95 S. Ct. 2525, 2532–34; *see also* Tex. Const. art. I, § 10; Tex. Code Crim. Proc. Ann. art. 1.05. For the decision to represent one's self to be constitutionally effective, a defendant must make the decision competently,

knowingly and intelligently, and voluntarily. *Moore v. State*, 999 S.W.2d 385, 396 (Tex. Crim. App. 1999), *cert. denied*, 530 U.S. 1216 (2000).

A decision to waive counsel and proceed pro se is made knowingly and intelligently if it is made with a full understanding of the right to counsel, which is being abandoned, as well as the dangers and disadvantages of self-representation. *Id.* at 396 n.5. If such factors are not otherwise apparent from the record, a trial court's inquiry regarding the accused's waiver of counsel should center on his background, age, experience, and education. *See Johnson v. State*, 760 S.W.2d 277, 278 (Tex. Crim. App. 1988). The accused should be aware there are technical rules of evidence and procedure, and he will not be granted any special consideration solely because he asserted his pro se rights. *Id.* at 279. The trial court, however, need not follow a formulaic questioning or particular script in ascertaining the knowing and voluntary nature of an accused's waiver of counsel, and a written waiver of the right to counsel is not required. *See Burgess v. State*, 816 S.W.2d 424, 428–30 (Tex. Crim. App. 1991).

Here, on numerous occasions during his discussion with the trial court, Cantu repeatedly asserted his desire to relinquish his retained counsel and represent himself, despite numerous warnings from the trial court of the potential consequences. The trial court permitted Cantu to represent himself only after

11

admonishing him that he would be held to the same standards as an attorney;[3] admonishing him multiple times that to proceed pro se could be "disastrous"; confirming that he knew the charges against him and the potential range of punishment; determining that he had attended some college; and appointing him standby counsel—an attorney, among many, that Cantu had once retained in relation to these charges. *See Collier*, 959 S.W.2d at 626 (finding waiver valid after noting similar admonishments and determinations by trial court and stating "that the trial court tried repeatedly to impress upon appellant the extreme gravity of his request to proceed *pro se* and the likelihood that it was a serious mistake"). Cantu repeatedly confirmed that he understood the dangers and disadvantages of self-representation as the trial court explained them to him, and thus his waiver was knowing and intelligent.

Furthermore, because Cantu voluntarily chose to forego representation by his retained counsel and repeatedly asserted his right to self-representation after being fully informed of its dangers and disadvantages, the trial court had no choice, under these circumstances, but to allow Cantu to represent himself, despite the court's numerous attempts to dissuade him from that course of

---

[3]Specifically, the trial court admonished Cantu that if he were to represent himself, he would "conduct the trial, . . . the jury selection, the opening statements, the examination of witnesses, the cross examination of witnesses, the reviewing of the Court's charge and determining whether you have any objections thereto, legally or otherwise, and then the final summations and response to any questions that the jury might have while they're deliberating. All of that is your responsibility."

action.  *See Burgess*, 816 S.W.2d at 428–29 ("[S]hould the trial court deny new counsel, and the accused unequivocally assert his right to self-representation under *Faretta*, persisting in that assertion after proper admonishment, the court *must* allow the accused to represent himself.").  We, accordingly, hold that Cantu's waiver of his right to counsel was made voluntarily, knowingly, and intelligently.

Cantu also argues that he was coerced into self-representation because the trial court told him that "this case is going to trial" whenever he announced that he was not ready.[4]  But Cantu waited until the morning of trial to bring to the trial court's attention that he wished to, again, change counsel or proceed pro se.  And it is well-settled that an accused's right to represent himself or choose his own counsel cannot be manipulated so as to obstruct the orderly procedure in the courts or to interfere with the fair administration of justice.  *Hubbard v. State*, 739 S.W.2d 341, 344 (Tex. Crim. App. 1987).  Trial courts must necessarily be wary of last-minute requests to change counsel lest they impede the prompt and efficient administration of justice.  *Moreno v. Estelle*, 717 F.2d 171, 176 (5th Cir. 1983), *cert. denied*, 466 U.S. 975 (1984).  In this case, Cantu's newest request for different counsel would have impeded the prompt and efficient administration

---

[4]Cantu also alleges that he was coerced into self-representation because his retained counsel announced that he was not ready at the start of the proceedings.  It is evident from the record that this announcement was made because Cantu desired to change counsel again, not because retained counsel could not have tried the case.

13

of justice. Under these circumstances, Cantu was not entitled to a continuance to seek different counsel, nor did he ask for one. *See Ex parte Windham*, 634 S.W.2d 718, 720–21 (Tex. Crim. App. 1982); *Peterson v. State*, 682 S.W.2d 397, 398 (Tex. App.—El Paso 1984, no pet.). We conclude that Cantu was not coerced by the trial court's announcing that it would proceed to trial that day.

Cantu also alleges that his waiver was involuntary because it was not written. The general requirement of a written waiver is imposed by statute, not by the state and federal constitutions. Tex. Code Crim. Proc. Ann. art. 1.051(g) (West Supp. 2001). But a written waiver is not required where, as here, the record shows that the defendant did everything constitutionally required to waive counsel and to assert his right to self-representation. *Burgess*, 816 S.W.2d at 430–31; *Fulbright v. State*, 41 S.W.3d 228, 235–36 (Tex. App.—Fort Worth 2001, pet. ref'd). We overrule Cantu's first point.

## B.    Excused Veniremembers

In his second, third, fourth, and fifth points, Cantu argues that the trial court erred by excusing certain veniremembers because no excusal for cause was demonstrated by the record, ostensibly giving the State extra peremptory strikes. But if a defendant does not object at the time a veniremember is excused for cause, he may not challenge that ruling on appeal. *Guzmon v. State*, 697 S.W.2d 404, 412–13 (Tex. Crim. App. 1985), *cert. denied*, 475 U.S. 1090 (1986). Neither the State nor Cantu objected to the exclusion of these veniremembers.

14

Thus, Cantu failed to preserve this potential error for our review. *See Barefield v. State*, 784 S.W.2d 38, 41 (Tex. Crim. App. 1989), *cert. denied*, 497 U.S. 1011 (1990). We overrule Cantu's second, third, fourth, and fifth points.

## C. Evidence of Past Conviction and Drug Affiliation

In his sixth and seventh points, Cantu argues that the trial court erred by "allowing the State"[5] to introduce evidence, during the guilt/innocence phase, of his prior conviction for transporting drugs, and he argues that the trial court erred by allowing the prosecutor to elicit evidence before the jury at the guilt/innocence phase that he was a member of a "drug cartel." But to complain on appeal about evidentiary errors made during trial, the error must have been preserved for appeal by a timely objection. Tex. R. App. P. 33.1; *Hollins v. State*, 805 S.W.2d 475, 476 (Tex. Crim. App. 1991); *see also Saldano v. State*, 70 S.W.3d 873, 889 (Tex. Crim. App. 2002) (holding that failure to object in a timely and specific manner during trial forfeits complaints about the admissibility of evidence). Cantu admits in his brief that he failed to object to the testimony about his prior conviction and the testimony about his involvement with drugs. We overrule Cantu's sixth and seventh points.

---

[5]Cantu also elicited testimony regarding both his prior conviction and his involvement in the drug trade.

## IV. CONCLUSION

Having overruled all seven of Cantu's points on appeal, we affirm the trial court's judgments.

BILL MEIER
JUSTICE

PANEL: DAUPHINOT, MCCOY, and MEIER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: August 16, 2012

16