02-11-056-CR









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-11-00056-CR

 

 


 
 
 Guadalupe Trinidad Cantu, Jr.
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE
 
 


 

 

----------

FROM THE 355th
District Court OF Hood COUNTY

----------

MEMORANDUM
OPINION[1]

----------

I.  Introduction

Appellant
Guadalupe Trinidad Cantu, Jr. appeals his convictions for three counts of
aggravated assault with a deadly weapon.[2]  In seven points, Cantu
contends that he was denied his right to counsel, that the trial court erred by
excusing certain veniremembers, and that the trial court erred by allowing
certain testimony in evidence at trial.  We will affirm.

II.  Background

          Cantu
and his wife Jane were in the process of separating, when because of Cantu’s
violent and harassing behavior, Jane fled from Mission, Texas, to Granbury,
Texas, with the couple’s two children on August 15, 2009.  Ten days later,
Jane also got a temporary protective order, which became final on October 15,
2009.

          On
the evening of November 27, 2009, in Granbury, Cantu raced his vehicle in
front of Jane, forcing her to come to a stop.  Cantu stepped out of his
vehicle, reached behind his back, pulled out a gun, and began firing at the car
with Jane and the children inside.  While Jane crouched in the front seat, Jane’s
son managed to put the car in reverse, and Jane stepped on the gas and was able
to flee the scene while calling 9-1-1 for help.  Later that evening,
investigators recovered fourteen shell casings from the scene of the shooting.  Seven
bullets had pierced Jane’s car, “in the hood, the front bumper, and . . . the
windshield.”  The Hildalgo County Sheriff’s Office arrested Cantu on
November 30, 2009.

          On
the day of trial, and significant to Cantu’s points on appeal, the following
colloquy took place:

THE COURT:        All
right.  CR11491, State of Texas versus [Cantu].  [Cantu], come to the counsel
table, please.

This
case is being called for trial.  Of course, I'll take judicial notice of all
prior proceedings in this matter, the date of indictment, that is, March 3,
2010, a series of attorneys that have been appointed or hired by this defendant
to represent him, including Andrew Ottaway, Daniel Webb, Charles Grantham,
Andrew Ottaway, Charles Grantham, and the various orders of substitution that
this Court signed for counsel, with the final one being -- having
been signed November -- excuse me -- December 21,
2010, allowing Mr. Grantham to substitute in as retained counsel for this
defendant.  And this case is set for jury trial this day, January 24,
2011, and jury selection is about to commence.  The State has announced ready,
the defendant not ready, so I'll hear from you about that, Mr. Grantham.

 

MR. GRANTHAM: Your
Honor, [Cantu] informed me last week that he was getting another attorney and
he -- he -- he wouldn't need me.  And then on --

 

THE COURT:        Do
you have that another attorney here, [Cantu]?

 

DEFENDANT:       No,
sir.  The thing is that I didn't remove him, my parents removed him.

 

THE COURT:        I
just wanted to know whether you had the other lawyer here, ready to go to
trial.

 

DEFENDANT:       Not
yet, sir.

 

THE COURT:        All
right.  Go ahead.

 

MR. GRANTHAM: And
then on I believe it was Friday, his father called me, he had talked to the
defendant, and had told me that his son told him to tell me that he doesn't
need me, if he has to have a lawyer, he'll represent himself.  And --

 

THE COURT:        [Cantu],
are you prepared to represent yourself here today?

 

DEFENDANT:       Yes,
sir.

 

THE COURT:        Are
you a lawyer?

 

DEFENDANT:       No,
sir.

 

THE COURT:        All
right.  You are not licensed by the Texas Supreme Court to practice law?

 

DEFENDANT:       That
is correct.

 

THE COURT:        You've
never been licensed to practice law by the Texas Supreme Court, is that
correct?

 

DEFENDANT:       That
is correct.

 

THE COURT:        Or
the Supreme Court in any other state?

 

DEFENDANT:       No,
sir.

 

THE COURT:        I
admonish you, sir, that the representation of yourself by you would be
extremely difficult.  Have you ever studied law?

 

DEFENDANT:       Half
a year of college, sir.

 

THE COURT:        Do
what?

 

DEFENDANT:       Just
half a year of college basis, not really --

 

THE COURT:        Have
you ever studied law in a law school, an accredited law school in the United
States?

 

DEFENDANT:       No,
Your Honor.

 

THE COURT:        All
right.  I admonish you again that for you to try to represent yourself would be
an extremely difficult thing for you to do.  Do you know anything about the
Texas Code of Criminal Procedure? 

 

DEFENDANT:       No,
sir.

 

THE COURT:        Have
you ever read or studied the Texas Code of Criminal Procedure?

 

DEFENDANT:       No,
sir.

 

THE COURT:        Have
you ever studied or read the Texas Rules of Evidence?

 

DEFENDANT:       Yes,
sir.

 

THE COURT:        Have
you ever studied or read the Texas Penal Code?

 

DEFENDANT:       Yes,
sir.

 

THE COURT:        You
have studied and read the entire Texas Penal Code?

 

DEFENDANT:       Not
the entire code.

 

THE COURT:        Well,
I admonish you, again, sir, that to represent yourself would be probably a
disaster for you to attempt to do that, because as I -- I'm taking
judicial notice of the fact that, from what you've told me, you have no formal
legal training.

 

DEFENDANT:       That
is correct.

 

THE COURT:        Have
you ever worked in a lawyer's office?

 

DEFENDANT:       No,
sir.

 

THE COURT:        Are
you a paralegal or have you ever been certified as a paralegal?

 

DEFENDANT:       No,
sir.

 

THE COURT:        I
admonish you, again, that to represent yourself would be probably, again,
disastrous for you, because you have no legal training.

 

DEFENDANT:       That
is correct.

 

THE COURT:        Now.
 I'll let you continue, Mr. Grantham.  Do you have something else you want
to say?  Go ahead.

 

MR. GRANTHAM: Your
Honor, I would like to place on the record that, in talking to [Cantu], I
passed on to him the plea bargain offer from the State of 40 years, and he told
me he would not take that, would not accept that.  I did ask him if I could -- if
he would authorize me to try to negotiate maybe a lesser plea bargain, and he
said, "No."  So -- but he's aware of the plea bargain
offer, but I was not able to try to negotiate anything better than that.  He -- he -- he -- he
seems to be aware of a lot of things, him talking to me.  In fact, a lot of our
conversation was mostly him talking to me.  So I advised him that last week
that I wouldn't think the Court would let me out, if I wanted out, and -- and
if he had another lawyer willing to come in, that I don't think he would grant
that lawyer a continuance to get ready, that the lawyer would have to come in
apace, ready to go to trial this week.

The --
the prior attorney that I took out, Mr. Ottaway, seems to be a competent
attorney and has indicated that if the Court would appoint him as a standby
attorney, he would help [Cantu].

 

THE COURT:        All
right.  [Cantu], is it your desire to terminate the employment of Mr. Grantham?

 

DEFENDANT:       That
is correct.

 

THE COURT:        And
is it your desire, in effect, to represent yourself?  Because this case is going
to trial.

 

DEFENDANT:       Yes,
I am aware.

 

THE COURT:        Do
you understand that?

 

DEFENDANT:       I am
ready to continue jury trial.

 

THE COURT:        Pardon
me?

 

DEFENDANT:       I am
willing to go back towards going to jury trial.

 

THE COURT:        All
right.  Sir, of course, under the law, you have the right to represent
yourself, but you will be held to the same standards that a licensed attorney
in the State of Texas under -- by the Texas Supreme Court would be
held to in -- in the trial of this case.  It will not lessen your responsibility,
the fact that you are a layperson.

 

DEFENDANT:       Yes,
sir.

 

THE COURT:        Do
you understand that?

 

DEFENDANT:       Yes,
sir.

 

THE COURT:        And
I admonish you of this.  You are charged with aggravated assault, a second
degree felony offense, and there has also been a notice of enhancement filed
with this court, and, therefore, if you are found guilty and it's proven true
that you were previously convicted of a felony offense, you face punishment of
confinement in the Institutional Division of Texas Department of Criminal Justice
for life or for any term of not less than five years nor more than 99 years,
and, in addition, you can be fined up to $10,000.  Do you understand --

 

DEFENDANT:       Yes,
sir.

 

THE COURT:        -- the
range of punishment for the offense?

 

DEFENDANT:       Yes,
Your Honor.

 

THE COURT:        And
knowing that’s the range of punishment that you face, that is, up to life in
the penitentiary, --

 

DEFENDANT:       Yes,
Your Honor.

 

THE COURT:        -- you
still want to represent yourself?

 

DEFENDANT:       Yes,
Your Honor.  Until further notice, until the other attorney step[s] in, we're
ready to go to jury trial.

 

THE COURT:        Well,
give me [the] name of the other attorney, I'll call his name or her name right
now and see if they're here and haven't responded.  What's that person's name?

 

DEFENDANT:       My
father was supposed to contact Garry Lewellen.

 

THE COURT:        And
is Mr. Lewellen present?

 

THE COURT:        All
right.  Go ahead.

 

(Pause)

 

DEFENDANT:       He
was supposed to contact me, see how much the fee was to retain him, until -- have
him stand by me, represent me and go to jury trial.

 

THE COURT:        All
right.  I'll order, then, Mr. Grantham, that you are allowed to withdraw
from this case.  And [Cantu], I will allow you to represent yourself before
this court and in this case.

 

DEFENDANT:       Yes,
Your Honor.

 

THE COURT:        Got
that?

 

DEFENDANT:       Yes,
sir.

 

[THE COURT:]      I'll
appoint Mr. Ottaway as standby counsel.  I will note that Mr. Ottaway,
you've been in this case, it looks like, twice before.  You were originally
appointed by the Court to represent this defendant December 4, 2009, over
a year ago, and then you were retained counsel, apparently, at some point
during the course of that, thereafter.

 

MR. OTTAWAY:    Yes,
Judge.  I was originally appointed, went through all the discovery, went to the
jail, showed the videos to the gentleman, and then he decided to go with Mr. Webb.
 I took my file to Mr. Webb, went over the case with Mr. Webb, I
helped him transition in.  Mr. Webb withdrew, and I think I got it back
from there, and I got the file back from Mr. Webb.

When
Mr. Grantham came in -- and I spent a little time with Mr. Webb -- with
Mr. Grantham, but not much, and then I was in it again, and, of course, I
had the file myself, and then when Mr. Grantham substituted in again, I
spoke with him on the phone, I never met him, but I have kind of a rough working
strategy outlined all the way through the thing, so I'm ready to be standby
counsel.  I've done it before.

 

MR. CHRISTIAN:  Your
Honor, may we approach?

 

THE COURT:        You
may.

 

(Off-the-record
discussion at bench)

 

THE COURT:        All
right.  Mr. Ottaway, are you willing to undertake standby counsel for [Cantu]?

 

MR. OTTAWAY:    Yes,
I've done it for other people.  It’s -- it’s fine.

 

THE COURT:        All
right, [Cantu].  Of course, that does not relieve you of the responsibility to
conduct this trial in your own behalf.  You are representing yourself.  Mr. Ottaway
is simply there to answer any questions that you might have as we go through
the trial.

 

DEFENDANT:       Yes,
Your Honor.

 

THE COURT:        And
in that respect, to answer and give you whatever information that you inquire
about.  Otherwise, he will simply be there and sit there with you through the
trial as you conduct the trial, that is, the jury selection, the opening
statements, the examination of witnesses, the cross examination of witnesses,
the reviewing of the Court’s charge and determining whether you have any
objections thereto, legally or otherwise, and then the final summations and response
to any questions that the jury might have while they’re deliberating.  All of
that is your responsibility.  Do you understand that?

 

DEFENDANT:       Yes,
Your Honor.

 

THE COURT:        All
right. Mr. Grantham, you are excused.

 

MR. GRANTHAM: Thank
you.

The
trial court proceeded to trial that day and Cantu represented himself throughout
the trial.  A jury found Cantu guilty of three counts of aggravated assault
with a deadly weapon.  After Cantu pleaded “not true” to an enhancement
paragraph, the trial court sentenced Cantu to life in prison on each count, with
the sentences to run concurrently.  This appeal followed.

III.  Discussion

          A.      Cantu’s
Rights to Counsel and Self-Representation

In
his first point, Cantu alleges that he was denied his rights to due process and
due course of law because he did not knowingly and voluntarily waive his right
to have counsel present at trial.  Specifically, Cantu argues that the trial
court failed to explain the dangers of self-representation, coerced him into
proceeding without an attorney, and failed to obtain a written waiver of his
right to counsel.

In
all criminal prosecutions in which an accused may be punished by imprisonment,
the accused has the right to assistance of counsel for his defense.  U.S.
Const. amends. VI, XIV; Tex. Code Crim. Proc. Ann. art. 1.05 (West 2005); see
Faretta v. California, 422 U.S. 806, 807, 95 S. Ct. 2525, 2527 (1975);
Collier v. State, 959 S.W.2d 621, 625 (Tex. Crim. App. 1997), cert.
denied, 525 U.S. 929 (1998).  In lieu of being represented by counsel,
however, a defendant also has a Sixth Amendment right to prosecute his own
legal defense.  Faretta, 422 U.S. at 818–21, 95 S. Ct. 2525,
2532–34; see also Tex. Const. art. I, § 10; Tex. Code Crim. Proc.
Ann. art. 1.05.  For the decision to represent one’s self to be
constitutionally effective, a defendant must make the decision competently,
knowingly and intelligently, and voluntarily.  Moore v. State, 999
S.W.2d 385, 396 (Tex. Crim. App. 1999), cert. denied, 530 U.S. 1216
(2000).

A
decision to waive counsel and proceed pro se is made knowingly and
intelligently if it is made with a full understanding of the right to counsel,
which is being abandoned, as well as the dangers and disadvantages of
self-representation.  Id. at 396 n.5.  If such factors are not otherwise
apparent from the record, a trial court’s inquiry regarding the accused’s
waiver of counsel should center on his background, age, experience, and
education.  See Johnson v. State, 760 S.W.2d 277, 278 (Tex. Crim. App. 1988).
 The accused should be aware there are technical rules of evidence and
procedure, and he will not be granted any special consideration solely because
he asserted his pro se rights.  Id. at 279.  The trial court,
however, need not follow a formulaic questioning or particular script in
ascertaining the knowing and voluntary nature of an accused’s waiver of
counsel, and a written waiver of the right to counsel is not required.  See Burgess
v. State, 816 S.W.2d 424, 428–30 (Tex. Crim. App. 1991).

Here,
on numerous occasions during his discussion with the trial court, Cantu
repeatedly asserted his desire to relinquish his retained counsel and represent
himself, despite numerous warnings from the trial court of the potential
consequences.  The trial court permitted Cantu to represent himself only after
admonishing him that he would be held to the same standards as an attorney;[3]
admonishing him multiple times that to proceed pro se could be “disastrous”;
confirming that he knew the charges against him and the potential range of
punishment; determining that he had attended some college; and appointing him
standby counsel—an attorney, among many, that Cantu had once retained in
relation to these charges.  See Collier, 959 S.W.2d at 626 (finding
waiver valid after noting similar admonishments and determinations by trial
court and stating “that the trial court tried repeatedly to impress upon
appellant the extreme gravity of his request to proceed pro se and
the likelihood that it was a serious mistake”).  Cantu repeatedly confirmed
that he understood the dangers and disadvantages of self-representation as the
trial court explained them to him, and thus his waiver was knowing and
intelligent.

Furthermore,
because Cantu voluntarily chose to forego representation by his retained
counsel and repeatedly asserted his right to self-representation after being
fully informed of its dangers and disadvantages, the trial court had no choice,
under these circumstances, but to allow Cantu to represent himself, despite the
court’s numerous attempts to dissuade him from that course of action.  See
Burgess, 816 S.W.2d at 428–29 (“[S]hould the trial court deny new counsel,
and the accused unequivocally assert his right to self-representation under Faretta,
persisting in that assertion after proper admonishment, the court must
allow the accused to represent himself.”).  We, accordingly, hold that Cantu’s
waiver of his right to counsel was made voluntarily, knowingly, and
intelligently.

Cantu
also argues that he was coerced into self-representation because the trial
court told him that “this case is going to trial” whenever he announced that he
was not ready.[4]  But Cantu waited until
the morning of trial to bring to the trial court’s attention that he wished to,
again, change counsel or proceed pro se.  And it is well-settled that an
accused’s right to represent himself or choose his own counsel cannot be
manipulated so as to obstruct the orderly procedure in the courts or to
interfere with the fair administration of justice.  Hubbard v. State,
739 S.W.2d 341, 344 (Tex. Crim. App. 1987).  Trial courts must necessarily be
wary of last-minute requests to change counsel lest they impede the prompt and
efficient administration of justice.  Moreno v. Estelle, 717 F.2d 171,
176 (5th Cir. 1983), cert. denied, 466 U.S. 975 (1984).  In this case,
Cantu’s newest request for different counsel would have impeded the prompt and
efficient administration of justice.  Under these circumstances, Cantu was not
entitled to a continuance to seek different counsel, nor did he ask for one.  See
Ex parte Windham, 634 S.W.2d 718, 720–21 (Tex. Crim. App. 1982); Peterson
v. State, 682 S.W.2d 397, 398 (Tex. App.—El Paso 1984, no pet.).  We conclude
that Cantu was not coerced by the trial court’s announcing that it would
proceed to trial that day.

Cantu
also alleges that his waiver was involuntary because it was not written.  The general
requirement of a written waiver is imposed by statute, not by the state and
federal constitutions.  Tex. Code Crim. Proc. Ann. art. 1.051(g) (West Supp. 2001).
 But a written waiver is not required where, as here, the record shows that the
defendant did everything constitutionally required to waive counsel and to assert
his right to self-representation.  Burgess, 816 S.W.2d at 430–31; Fulbright
v. State, 41 S.W.3d 228, 235–36 (Tex. App.—Fort Worth 2001, pet. ref’d).  We
overrule Cantu’s first point.

          B.      Excused
Veniremembers

In
his second, third, fourth, and fifth points, Cantu argues that the trial court
erred by excusing certain veniremembers because no excusal for cause was
demonstrated by the record, ostensibly giving the State extra peremptory
strikes.  But if a defendant does not object at the time a veniremember is
excused for cause, he may not challenge that ruling on appeal.  Guzmon v.
State, 697 S.W.2d 404, 412–13 (Tex. Crim. App. 1985), cert. denied,
475 U.S. 1090 (1986).  Neither the State nor Cantu objected to the exclusion of
these veniremembers.  Thus, Cantu failed to preserve this potential error for
our review.  See Barefield v. State, 784 S.W.2d 38, 41 (Tex. Crim. App.
1989), cert. denied, 497 U.S. 1011 (1990).  We overrule Cantu’s second,
third, fourth, and fifth points.

          C.      Evidence
of Past Conviction and Drug Affiliation

In
his sixth and seventh points, Cantu argues that the trial court erred by
“allowing the State”[5] to introduce evidence,
during the guilt/innocence phase, of his prior conviction for transporting
drugs, and he argues that the trial court erred by allowing the prosecutor to
elicit evidence before the jury at the guilt/innocence phase that he was a
member of a “drug cartel.”  But to complain on appeal about evidentiary errors
made during trial, the error must have been preserved for appeal by a timely
objection.  Tex. R. App. P. 33.1; Hollins v. State, 805 S.W.2d 475, 476
(Tex. Crim. App. 1991); see also Saldano v. State, 70 S.W.3d 873, 889
(Tex. Crim. App. 2002) (holding that failure to object in a timely and specific
manner during trial forfeits complaints about the admissibility of evidence). 
Cantu admits in his brief that he failed to object to the testimony about his
prior conviction and the testimony about his involvement with drugs.  We
overrule Cantu’s sixth and seventh points.

IV.  Conclusion

          Having
overruled all seven of Cantu’s points on appeal, we affirm the trial court’s
judgments.

 

 

BILL MEIER
JUSTICE

 

PANEL:  DAUPHINOT, MCCOY, and MEIER, JJ.

 

DO NOT PUBLISH

Tex. R. App.
P. 47.2(b)

 

DELIVERED: 
August 16, 2012









[1]See Tex. R. App. P. 47.4.





[2]See Tex. Penal Code
§§ 22.02(a)(2), (b)(1) (West 2011).





[3]Specifically, the trial
court admonished Cantu that if he were to represent himself, he would “conduct
the trial, . . . the jury selection, the opening
statements, the examination of witnesses, the cross examination of witnesses,
the reviewing of the Court’s charge and determining whether you have any
objections thereto, legally or otherwise, and then the final summations and
response to any questions that the jury might have while they’re deliberating.  All
of that is your responsibility.”





[4]Cantu also alleges that he
was coerced into self-representation because his retained counsel announced
that he was not ready at the start of the proceedings.  It is evident from the
record that this announcement was made because Cantu desired to change counsel
again, not because retained counsel could not have tried the case.





[5]Cantu also elicited
testimony regarding both his prior conviction and his involvement in the drug
trade.