**Jose Moises GUZMON, A.K.A. Jose Moises Romero, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 69326.**

Court of Criminal Appeals of Texas, En banc.

Oct. 2, 1985.

Robert C. Dunn, Coriscana, for appellant.

Patrick C. Batchelor, Dist. Atty., Corsicana, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

ONION, Presiding Judge.

This is an appeal from a conviction for capital murder, where the punishment was assessed at death by the court following the jury's verdict of guilty and affirmative answers to the special issues submitted under Article 37.071, V.A.C.C.P. See V.T.C.A., Penal Code, § 19.03.

On appeal the appellant contends the trial court erred in allowing the prosecutor to ask questions of him on cross-examination that were based on hearsay and not supported by admitted evidence. Appellant also contends the trial court erred in permitting the prosecutor to ask questions about a statement of a co-conspirator for the purpose of impeaching the appellant, and in permitting the prosecutor to inquire about appellant's desertion from the Salvadorian Army. In another ground of error appellant challenges the sufficiency of the evidence to sustain the conviction in that the State failed to prove the murder was committed in the course of a robbery or attempted robbery as alleged. Appellant lastly complains the court erred in excusing certain prospective jurors because he was not allowed to examine certain jurors and because some prospective jurors were "excused generally for objection to the death penalty."

The record reflects that appellant shot and killed the deceased, Henry Spencer Finch, while he and two other men were in the process of taking Finch's automobile.

Brian Ingram, age 20, testified that on February 4, 1984, he was working in a grocery store and gas station (Fitzgerald Shell) in Navarro County. He related that about 1:30 a.m. appellant and two other Hispanic appearing men came to the store in a brown Datsun or Toyota automobile and asked to borrow wrenches to work on the car. He told them he had none and suggested they go across the street to the Exxon gas station. The brown automobile was driven to the Exxon station and it sounded to Ingram as if the car had mechanical problems.

Some 30 minutes later Ingram observed a cream-colored Ford Granada being driven into the Exxon station by a man he later learned to be Finch, the deceased. A little later he saw Finch and the Exxon station attendant, Sonny Webb, working on a headlight on the Ford. The three Hispanic men were standing nearby watching. Later Ingram saw Finch and Webb inside the station, and observed two of the Hispanic men get into the front seat of the Ford through the driver's door. Ingram then saw the appellant run from the station and get into the front seat of the Ford on the passenger side. At this point Ingram observed Finch with the driver's door open attempting to pull the man out from under the steering wheel. Then Ingram saw appellant lean across the man in the middle of the front seat and shoot Finch, who fell to the ground screaming. Ingram ran across the street and saw the Ford being driven out of the station. The police arrived shortly thereafter.

Albert Webb, Jr., testified he was the attendant at the Singleton's Exxon station at the intersection of Highway 287 at Interstate 45 in Navarro County on the date in question. At approximately 2 a.m. on February 4, 1984, appellant and two other Hispanic men drove a brown Toyota automobile into the station. He removed a broken spark plug from the automobile motor and water emerged. Webb told the men he could repair the Toyota for them. Later Finch, the deceased, drove his cream-colored Ford into the station and asked to have his headlights replaced. After replacing the headlights, Webb and Finch went inside the station. Finch paid Webb. While they were talking, appellant came through the door with a gun and demanded Finch's car keys. Finch said they were in the Ford and the appellant backed out the door. Finch tried to get out the door, but appellant held the door shut from the outside. Webb told Finch to let them have the car and he would call the police. As Webb was talking to the police over the telephone, he observed that Finch had gone outside, had the driver's door open and was trying to pull the "driver" out of the car.

At this juncture Webb saw appellant on the passenger side of the front seat raise his gun and shoot Finch. Webb then observed the Ford being driven out of the Exxon station. Webb again called the police to send an ambulance.

Corsicana Police Officer Raymond Rosas testified he went to the Exxon station on the date in question and found a 1977 brown Toyota. After checking the registration and tracing the vehicle through three different automobile dealers, he discovered the appellant Romero was the last purchaser. After talking to appellant's wife at the Sheraton Inn in Dallas, Rosas in company of Dallas police officers went to Gateway apartments at 211 Kitt Lane in Dallas. It was a different place than where appellant had stayed previously. Upon the officers' arrival at the apartment, appellant ran from the apartment, was pursued and was apprehended. After appellant was placed in a patrol car, Rosas looked into the car to make an identification, at which time appellant voluntarily asserted in Spanish "I shot him."

Dr. Nina Hollander, Medical Examiner in Dallas County, performed the autopsy on the deceased. She testified the cause of death was a gunshot of the trunk of the deceased's body. The bullet entered the chest and went through the liver, diaphragm and right lung, resulting in considerable hemorrhaging.

The appellant, testifying in his own behalf, stated his name was Jose Moises Romero and he was 21 years old, married and that he had three children. He had come to this country from El Salvador and lived in Dallas. He denied possessing a gun or shooting the deceased.

■ His testimony is somewhat disjointed principally because he was allowed in large measure to testify in a narrative manner through the use of a Spanish language interpreter.[1]

Appellant explained that at the time in question that he was drinking, and that his friends, Lewis Cabrera and Jesus Polasko,[2] took advantage of him. It was apparently decided, by the three on the spur of the moment, to drive that night from Dallas to Houston in appellant's car. Cabrera was driving. Appellant stated he was drunk and asleep. Appellant later woke up because of the noise the car was making. They sought help at a Shell station with Polasko asking for wrenches. They were directed to the Exxon station across the street. There the attendant tried to help them, but he could not repair appellant's car. While they were there a man in a yellow car drove into the station. While the attendant was working on the yellow car's headlights, appellant saw Cabrera and Polasko inside the gas station "trying to pump ... the machines of business." Appellant told them to quit because if the police were called they would be in more trouble. He was already "mad" because they had "messed up" his car. As appellant was sitting in his car, Cabrera came to the car and told him "this man has got a lot of money in his billfold," apparently meaning the man in the yellow car. Later appellant saw Cabrera and Polasko run from inside the station and get into the yellow car. Appellant realized something was wrong, but without thinking felt he had to go with them, that he had no choice, that he had to return to his pregnant wife. He ran to the yellow car, got in the front seat in the middle and "then Polasko came." Appellant then saw that the man who drove the yellow car into the station was trying to pull Cabrera from the driver's seat. All appellant remembered then was a gunshot, and then yelling and screaming. Cabrera couldn't "get the car to go," so appellant drove the yellow car to Dallas.

1. It appears that neither the attorneys nor the interpreter understood the proper use of an interpreter. The attorneys frequently phrased their questions "Ask him if he ..." and the interpreter frequently stated, "He says ... Says he did ..." Attorneys should ask their questions as if no interpreter was present. The interpreter should translate the question and answer in a literal manner.

2. Appellant stated he had tried to help Polasko, had found him a job and let him stay at appellant's apartment.

Appellant testified he "knew we had to leave. You all will have to understand that you could not stay there." He denied the shooting or even having a gun. He did not testify who did have a gun or who fired the shot.

Appellant related he could not sleep well, and his wife suggested they move, which they did. On the day of his arrest someone called him and told him the police were talking to his wife at the hotel where she worked. He knew when the police arrived they were "coming for me," and he ran because he was scared, and it was "only natural." He related when apprehended he put his hands up, and the police had no need to throw him to the ground and to kick and beat him as they did. Some four or five days after he had been taken to Corsicana he was taken to the hospital there for treatment.

Appellant was the only defense witness.

At the conclusion of the testimony at the guilt stage of the trial the jury returned its verdict finding appellant guilty of capital murder.

Appellant's first two grounds of error are directed to his cross-examination by the District Attorney. Several observations about the cross-examination of a defendant in a criminal case are here in order.

"When the defendant in a criminal case voluntarily takes the stand and testifies in his own behalf, he occupies the same position and is subject to the same rules of cross-examination as any other witness. *He may be contradicted, impeached, made to give evidence against himself, cross-examined as to new matter, and treated in every respect as any other witness testifying in behalf of the defendant,* except when there are overriding constitutional or statutory prohibitions; for example, where a statute forbids certain matters to be used against him, such as proof of his conviction on a former trial of the same case, or his failure to testify on a former trial, or a confession made while he was in jail without his having been first cautioned that it might be used against him." 21

Tex.Jur.3rd, Criminal Law, § 1601, pp. 384–385. (Emphasis supplied.) See also 21 Tex.Jur.3rd, Criminal Law, § 3303, p. 712; 1 Branch's Ann.P.C., 2nd ed., § 168, p. 170; *Brumfield v. State*, 445 S.W.2d 732 (Tex.Cr.App.1969) and authorities there cited.

■ This Court rarely reverses a conviction of a crime solely because an improper question was propounded to the defendant as a witness. To cause reversal the question must be obviously harmful to the defendant. *Cavender v. State*, 547 S.W.2d 601 (Tex.Cr.App.1977); *Gowans v. State*, 522 S.W.2d 462 (Tex.Cr.App.1975); *Sensabaugh v. State*, 426 S.W.2d 224 (Tex.Cr.App.1968).

In deciding such question it must be remembered that each case has its own characteristics and this Court will look at the entire record with the surrounding circumstances, the nature of the evidence sought and its possible relationship to other testimony in order to determine the probability or possibility of injury. *Sensabaugh v. State*, supra; *Wood v. State*, 511 S.W.2d 37, 46 (Tex.Cr.App.1974).

It is, of course, well established that an accused is to be tried upon the merits of each case alone and that proof of extraneous crimes or specific acts of misconduct are not generally admissible, except under certain conditions and exceptions. *Sensabaugh v. State*, supra.

■ Any error in asking an improper question or in admitting improper testimony may be generally cured or rendered harmless by a withdrawal of such testimony and an instruction to disregard. The exception to this general rule occurs where it appears that the question or the evidence is clearly calculated to inflame the minds of the jury and is of such character as to suggest the impossibility of withdrawing the impression produced on their minds. *Boyde v. State*, 513 S.W.2d 588 (Tex.Cr.App.1974); *White v. State*, 444 S.W.2d 921 (Tex.Cr.App.1969); *Cavender v. State*, 547 S.W.2d 601 (Tex.Cr.App.1977); *Carter v. State*, 614 S.W.2d 821 (Tex.Cr.App.1981).

With this background we note that in his initial ground of error appellant contends the trial court erred in allowing the prosecutor to ask questions of him on cross-examination that were based on hearsay and not supported by admitted evidence.

In this connection appellant directs our attention in the record to the following on cross-examination:

"Q   Mr. Romero, you're absolutely not going to admit that you shot this man?  I said, are you not going to admit that you shot this man?

"A   No way.

"Q   Did he say that first?

"A   No.   There was something else. Said, any other person would have said the same thing.

"Q   This was your gun that shot this man, wasn't it?

"A   He says, do you have legal paper to prove that, you know, he has a gun of that caliber?

"Q   You told Lewis Palos that it was your gun, didn't you?

"A   Do you know what happened when Lewis Palos apprehended me?

"Q   You told Lewis Palos that you threw the gun out of the car on the way back to Dallas, didn't you?

"A   It's a story.   Says if I was—

"Q   You deliberately took your pistol with you when you went to Corsicana, didn't you?

"A   Says, again, I have said, said that gun is not mine.

"Q   You and these other friends of yours had been drinking all day Friday, hadn't you?   You hadn't been working?

"A   No.

"Q   And you took a little target practice in your apartment, fired two shots in the wall before you left to come down here?

"A   Says, I don't know whether there was any shots in the wall.

"Q   If your wife told Lewis Palos and Raymond Rosas that you had been drink-ing all day and fired two shots in the wall before you left, would she have been lying to them?

"A   Says, naturally yes.   It's crazy. Do you want it—

"Q   No.

"MR. DUNN: Your Honor, we would like his response, whether, you know, responsive or not to be read into the record so this jury can hear.

"MR. BATCHELOR: If he answered my question.  If he makes a little speech, I would object, your Honor, to his little speech.

"MR. DUNN: What the Court's ruling?

"THE COURT: Let me talk to you all a minute.

"(The Attorneys for the State and the Attorneys for the Defendant came forward to the Bench for an off-the-record discussion which was as follows:)

"THE COURT: What was the last answer?

"INTERPRETER PEREZ: He basically was saying we live in the apartment. Says first time we fired a shot, says, man, we have dozens of cops on us. Says, we don't need cops.

"THE COURT: Well, I'm going to sustain the objection."

Appellant complains of the questions about whether appellant told a Louis Palos the gun was his and that he threw the gun out of the car on the way back to Dallas, and about whether appellant's wife told Palos and Rosas appellant fired two shots into his apartment wall before the trip to Corsicana.   He argues these questions were more in the form of positive statements rather than an inquiry type examination, and the jury was led to believe they were facts rather than hearsay.   Appellant urges the District Attorney acted in bad faith rather than attempting to lay a predicate for impeachment.

We observe, as does the State, there was no objection to the three questions mentioned.[3]   It is well settled that in order to

**3.**   After appellant commenced to answer the last question and was cut short by the prosecutor,

complain on appeal of a question asked it must be first objected to at the time of trial. *Green v. State,* 682 S.W.2d 271 (Tex. Cr.App.1984); *Daniel v. State,* 668 S.W.2d 390 (Tex.Cr.App.1984); *Woolls v. State,* 665 S.W.2d 455 (Tex.Cr.App.1983); *Sheldon v. State,* 510 S.W.2d 936 (Tex.Cr.App. 1974); *Aldrighetti v. State,* 507 S.W.2d 770 (Tex.Cr.App.1974); *Pendleton v. State,* 434 S.W.2d 694 (Tex.Cr.App.1968). Nothing is presented for review. *Hunter v. State,* 530 S.W.2d 573 (Tex.Cr.App.1975).

Appellant asserts "bad faith" but he made no effort to prove the same. The State asserts in its brief that Police Officer Lewis Palos (who was not identified as such in the record) took an extrajudicial confession from the appellant; that because of the overwhelming evidence of appellant's guilt the confession was not used in the State's case-in-chief but reserved for possible impeachment in the event that appellant testified; that the State was laying the predicate for possible impeachment when the questions were asked, but that it was later decided not to impeach, and there was no bad faith. These assertions are, of course, not supported by the record. See *Brown v. State,* 523 S.W.2d 238 (Tex.Cr. App.1975); *Herrin v. State,* 525 S.W.2d 27 (Tex.Cr.App.1975).

■ On direct examination appellant testified that he did not own or possess a gun, that he only heard a gunshot and that he did not shoot the deceased. It was clearly proper, in laying a predicate for possible impeachment, to ask if he had not made a contrary statement or statements to someone else, or to ask if he had not fired shots into an apartment. It was highly improper, however, to ask if appellant's wife had told the officers about the holes in the wall. However, in view of the lack of objections as earlier noted, the answers given, and the failure to show bad faith on the part of the prosecutor, the initial ground of error is overruled.

appellant's counsel asked that his entire response be "read into the record."

Next appellant contends the trial court erred in permitting the prosecutor to ask questions about a statement of a co-conspirator for the purpose of impeaching appellant, and in permitting the prosecutor to bring in unsworn testimony of the appellant's desertion from the Salvadorian Army. The ground of error is multifarious like the initial ground of error, but we shall proceed to address the same.

On cross-examination of the appellant the following appears:

"Q Why would Lewis Cabrera say you were the person that shot Mr. Finch?

"MR. DUNN (Defense Counsel): Your Honor, we object to the hearsay to this Court.

"THE COURT: Let me talk to you all just a minute up here."

The court pointed out to the prosecutor that Cabrera had not testified, that the basis of the question was not in evidence. The District Attorney responded in effect that he was laying the predicate for impeachment and "I've got to first ask him." The court stated, "Okay" and appellant's counsel asked that "our exception" be noted. Appellant then answered the question that it was "only natural" Cabrera would say so, "We're both in the same problem."

The State agrees in its brief that in retrospect the question was "pretty dumb," particularly in light of appellant's extremely logical answer.[4] It asserts Cabrera was on the State's witness list and it intended to use him until appellant's answer explained any testimony that might have been given by Cabrera. The State argues that the appellant could not have been harmed by the "exchange."

The State urges appellant failed to procure a ruling on his objection and that nothing is presented for review, citing *Nichols v. State,* 504 S.W.2d 462 (Tex.Cr. App.1974); *Lawhon v. State,* 429 S.W.2d 147 (Tex.Cr.App.1968). As we read the

**4.** The State now acknowledges that it would have been better to have asked why the State's witnesses testified appellant was the one who shot the deceased.

record, the court's "Okay" after the State urged it had the right to lay the predicate for impeachment and the appellant's noted "exception" was sufficient to preserve error, if any.

■ While we agree with the District Attorney it was a "dumb question" and that it should not have been asked, we fail to perceive reversible error given the circumstances of the case.[5] The appellant has cited no authorities to the contrary. We overrule this part of appellant's second ground of error.

Appellant also complains in the same ground of error that the court permitted unsworn testimony by the prosecutor about his desertion from the Salvadorian Army. The record on cross-examination reflects:

"Q * * * You were in the Army in Salvador when you hooked it, weren't you?

"MR. DUNN (Appellant's Counsel): Objection, your Honor. That's an out-of-court statement, unless Mr. Batchelor can back it up.

MR. BATCHELOR (District Attorney): I can back it up, your Honor.

"THE COURT: I overrule the objection.

"MR. DUNN: Note our exception.

"Q (By Mr. Batchelor) Ask him if he needs time to think of a good answer.

"MR. DUNN: Objection, your Honor. Side-bar comment. Like to instruct him . . .

"A (By the witness) He says, you're asking me a political question. These are political problems of my country.

"Q (By Mr. Batchelor) I didn't ask him a political question. Tell him I asked him if he wasn't in the Army in El Salvador when he hooked it in 1979, to finish out in 1982?

"A Says I had my family, I had my kids. Says, I have to finish my service, says, but I opted to leave. I had to protect them."

■ It is observed that appellant's general objection to the question was in essence no objection and presents nothing for review. *Williams v. State*, 549 S.W.2d 183 (Tex.Cr.App.1977). Further, when the question was rephrased by the prosecutor, appellant made no objection and preserved no error for review. *Hunter v. State*, 530 S.W.2d 573 (Tex.Cr.App.1975). See also *Green v. State*, supra; *Woolls v. State*, supra.

■ Appellant now argues on appeal that the questions asked were calculated to inflame the minds of the jurors and were asked in violation of Article 38.29, V.A.C. C.P. These were not the trial objections. When the objection at trial is not the same as that urged on appeal, the complaint is not properly preserved for review. *Williams v. State*, supra; *Elizaldi v. State*, 519 S.W.2d 881 (Tex.Cr.App.1975); *Nelson v. State*, 507 S.W.2d 565 (Tex.Cr.App.1974). See also *Bell v. State*, 442 S.W.2d 716 (Tex.Cr.App.1969).

Appellant also argues the questions were asked in bad faith and the District Attorney did not "back up" the questions. At no time did appellant attempt to show the prosecutor acted in bad faith as in *Cavender v. State*, 547 S.W.2d 601 (Tex.Cr.App. 1977).

■ The State argues there was no bad faith, that the appellant on voir dire examination made known to the jury panel he was an illegal alien from El Salvador and the term "wet-back" was used. On direct examination appellant testified, "Says, like many of you jurors know, I come from El Salvador. Says, I have had many problems. That is the reasons that I find myself in this country. That in no way gives me any reason to look for problems in this country." Also on direct examination appellant stated, "Says, only God knows how much problems and trouble I went through to get my wife into this country which is the mother of my children." The State argues a false impression had been left with the jury, that the door had been opened for the questions asked, and fur-

5. If it is appellant's claim that there was bad faith, no effort was made to show the same.

ther that the State did not state appellant was a deserter or charged with any offense.

The questions should not have been asked, and the State never did "back up" the questions, but for reasons stated and under the circumstances described, we find no reversible error. Appellant's second ground of error is overruled.

Appellant urges the trial court erred in accepting the jury verdict at the guilt stage when there was insufficient evidence to sustain such verdict. Appellant says there was a material variance between the allegata and probata.

The indictment alleged in part that appellant

"did then and there intentionally and knowingly cause the death of an individual, Henry Spencer Finch, by shooting him with a gun, and said Jose Moises Romero did then and there intentionally cause the death of Henry Spencer Finch in the course of committing or attempting to commit the offense of robbery directed against Henry Spencer Finch."

■ Appellant argues that the State failed to prove robbery or attempted robbery because there was no showing that the cream-colored Ford belonged to Henry Spencer Finch, the deceased, or by what authority he was in possession of the vehicle, if he was in possession. Appellant cites V.T.C.A., Penal Code, §§ 29.02 and 1.07.

Witnesses Ingram and Webb testified Finch was the individual who drove the Ford into the Exxon station. Ingram described him as "the owner of the vehicle" and later indicated the Ford belonged to Finch, all without objection. Webb testified he replaced the headlights on the car at Finch's request, and later appellant demanded of Finch the keys to the Ford, and that Finch went outside and tried to pull one of the men out of "his car."

Appellant testified the deceased drove the car into the Exxon station and that after the deceased was shot he left and drove the Ford to Dallas.

The evidence was clearly sufficient to show that Finch was in possession of the Ford and was an "owner." V.T.C.A., Penal Code, § 1.07.

Appellant's contention is overruled.

Lastly appellant contends the trial court erred in excusing prospective jurors, David Hall, Jewell White and Samuel White, because they voiced general objections to the death penalty.

Venireman David Hall was not excused for merely voicing general objections to the death penalty. The record reflects the following on voir dire examination of Hall

"Q Have you formed in your mind a conclusion based on what you've read and heard as to the guilt or innocence of the Defendant?

"A Yes.

"Q Is this conclusion that you've established in your mind based on what you've read or heard? Would that influence your verdict?

"A Yes."

■ Hall was excused upon the State's challenge under Article 35.16(a)(10), V.A.C. C.P., which provides that if a venireman answers the question in the affirmative as Hall did "... he shall be discharged without further interrogation by either party or the court...."

The trial court properly complied with Article 35.16(a)(10), supra. Hall was not erroneously excused, and not excused for the reason asserted by appellant.

■ Venireman Jewell White clearly stated answers that would justify sustaining the State's challenge for cause under *Witherspoon v. Illinois,* 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), and *Wainwright v. Witt,* 469 U.S. ——, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985). See also *Smith v. State,* 676 S.W.2d 379 (Tex.Cr. App.1984). Ms. White never wavered in her stated beliefs upon interrogation by the appellant. The appellant did not object to the exclusion of this venireman, and thereby waived the right to maintain this conten-

tion on appeal. *Hawkins v. State*, 660 S.W.2d 65 (Tex.Cr.App.1983).

Venireman Samuel White was clearly disqualified under *Witherspoon* and *Wainwright* by his answers. He never wavered in his beliefs under interrogation by appellant. The challenge for cause was sustained without objection by appellant. See *Hawkins v. State*, supra. No error is presented on appeal.

As originally stated, ground of error number four also complained that appellant "was not allowed to examine certain jurors." When restated later in the brief, this complaint was not mentioned. Our attention has not been directed to any prospective jurors he was not allowed to examine. No portion of the record is mentioned. No authorities have been cited and no argument advanced. The contention presents nothing for review. See Article 40.09, V.A.C.C.P.; *Williams v. State*, 549 S.W.2d 183 (Tex.Cr.App.1977); *Hafti v. State*, 487 S.W.2d 745 (Tex.Cr.App.1972); *Gaines v. State*, 481 S.W.2d 835 (Tex.Cr.App.1972); *Genter v. State*, 473 S.W.2d 35 (Tex.Cr.App.1971).

Appellant's fourth ground of error is overruled.

The judgment is affirmed.