**Opinion filed April 2, 2015**



In The

# Eleventh Court of Appeals

_____

## No. 11-13-00179-CR

_____

**EUGENE PATHEAL A/K/A BENJAMIN PATHEAL
A/K/A BENJAMIN STEIN, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 104th District Court**

**Taylor County, Texas**

**Trial Court Cause No. 18356B**

## M E M O R A N D U M   O P I N I O N

The jury found Eugene Patheal a/k/a Benjamin Patheal a/k/a Benjamin Stein guilty of the offense of sexual assault.[1]  The jury found that Appellant had one prior felony conviction for indecency with a child and assessed punishment at life

---

[1]TEX. PENAL CODE ANN. § 22.011(a)(1)(A), (b)(4) (West 2011) (causing "the penetration of the . . . sexual organ of another person" and knowing "that as a result of mental disease or defect the other person is at the time of the sexual assault incapable either of appraising the nature of the act or of resisting it." ).

imprisonment. The trial court sentenced Appellant accordingly. Appellant presents three issues on appeal. We affirm.

## I. *The Charged Offense*

The grand jury returned a five-paragraph indictment against Appellant for the offense of sexual assault; the fifth paragraph alleged a prior conviction of indecency with a child. As relevant to the indictment in this case, a person commits the offense of sexual assault if he intentionally or knowingly causes the penetration of (1) the anus or sexual organ of another person by any means without that person's consent or (2) the mouth of another person by the sexual organ of the actor without that person's consent. PENAL § 22.011(a)(1)(A), (B). Sexual assault occurs without the other person's consent if the actor compels the other person to submit or participate by the use of physical force or violence or if the actor knows that, as a result of mental disease or defect, the other person was incapable either of appraising the nature of the act or of resisting it at the time of the sexual assault. *Id.* § 22.011(b)(1), (b)(4). As charged, sexual assault is a second-degree felony but is punishable by mandatory life imprisonment if the actor has been previously convicted of indecency with a child. *Id.* §§ 22.011(f), 12.42(c)(2) (West Supp. 2014).

## II. *Background and Evidence at Trial*

Emily Frye, M.W.'s family doctor from several years ago, testified that M.W. had a diagnosis of Prader-Willi syndrome and that Prader-Willi syndrome "almost always is associated with mild mental retardation," which is an intelligent quotient or "IQ" of less than 70. Dr. Frye testified that M.W. "tested in the mild mental retardation" range. Dr. Frye also testified that M.W. was diagnosed with Asperger's syndrome.

M.W. lived at Rock House, a group home in Eastland, when she ran away over a dispute with a staff member. M.W. walked from Rock House to a truck stop

2

in Eastland where Appellant worked. M.W. arrived and ate at the truck stop's restaurant after it became dark outside, and she subsequently met Appellant. Appellant told M.W. that she could sleep in his van.

Appellant drove M.W. to his home in Abilene, the next morning after his shift ended. Appellant slept while M.W. watched a movie and showered. M.W. subsequently went into Appellant's bedroom where he asked her to undress. Appellant proceeded to have vaginal intercourse with M.W.

Appellant subsequently drove M.W. to a store and told her to look for cereal while Appellant waited outside. M.W. found cereal and went outside to tell Appellant, but Appellant had left. M.W. went back into the store and hid in a clothes rack, where a store employee eventually found her and called the police when M.W. would not leave. Police arrived, and M.W. showed them to Appellant's home.

During her cross-examination by Appellant's counsel, M.W. refused to answer several questions, cried in front of the jury, and received several admonishments from the trial court to answer questions being asked. Appellant moved for a mistrial because of these interruptions, which the trial court denied. Appellant alternatively requested that the trial court strike M.W.'s testimony. The trial court decided to let M.W. meet with the State and her family so that she could "work through some issues." The trial court explained that Appellant had more cross-examination and had the right to continue to cross-examine M.W., and Appellant did not object to resuming his cross-examination of M.W. "at another point."

The trial court subsequently explained to the jury that they would change witnesses and that M.W. "will come back to the stand at some point . . . so that [Appellant's attorney] will have the opportunity to complete his cross-examination." Appellant completed his cross-examination of M.W. the following

3

day with fewer interruptions. Appellant did not move for a mistrial or to strike M.W.'s testimony on the second day of cross-examination. Appellant, however, moved for a new trial after the trial had ended, based on M.W.'s interruptions during cross-examination.

Racheal Honea, M.W.'s waitress at the restaurant, testified that she concluded that M.W. "wasn't completely all there" based on her interactions with M.W. Sherra Cate, a patron at the restaurant, testified that she thought M.W. "seemed slow a little bit" based on her interactions with M.W. Chasity Girtz, an employee at the store that Appellant took M.W. to, testified that "something wasn't right" with M.W. based on the way M.W. acted. Krairilyna Enriquez, the manager at the store, testified that M.W. "wasn't . . . normal" and "spoke like a six-year-old little girl." Appellant objected to the testimony because none of the witnesses were qualified as expert witnesses and because none of them saw M.W. interact with Appellant. The trial court overruled each objection.

Jarvis Wright, a psychologist, explained mental diseases and IQ tests. The State, on cross-examination, asked Dr. Wright whether "predators are attracted to prey." Appellant objected to the terms "predator" and "prey" as "specifically calculated inflammatory terms," which the trial court overruled. Appellant objected again when the State asked, "candy is kind of the typical thing that we've seen in the past because we wanted that prey to start trusting the predator?" The trial court asked the State to rephrase its question, and cross-examination continued without further objections. The State used similar language in its closing argument without objection.

III. *Issues Presented*

Appellant first contends that the trial court erred by admitting the lay opinion testimony of Honea, Cate, Girtz, and Enriquez. Appellant next asserts that the trial court erred by overruling Appellant's objections to the State's use of

4

"predator" and "prey." Finally, Appellant argues that the trial court erred by denying Appellant's motion for a mistrial and his subsequent motion for new trial.

## IV. *Standard of Review*

We review the admission or exclusion of evidence for an abuse of discretion. *Powers v. State*, 165 S.W.3d 357, 359 (Tex. Crim. App. 2005) (citing *Green v. State*, 934 S.W.2d 92, 101–02 (Tex. Crim. App. 1996)). We similarly review a denial of a motion for mistrial and denial of motion for new trial under an abuse of discretion standard. *Gamboa v. State*, 296 S.W.3d 574, 580 (Tex. Crim. App. 2009) (denial of motion for mistrial); *State v. Herndon*, 215 S.W.3d 901, 906 (Tex. Crim. App. 2007) (denial of motion for new trial). A trial court abuses its discretion by acting without reference to any guiding rules or principles and its decision "is so clearly wrong as to lie outside the zone within which reasonable persons might disagree." *Howell v. State*, 175 S.W.3d 786, 790, 792 (Tex. Crim. App. 2005). Additionally, a trial court abuses its discretion by denying a motion for new trial "when no reasonable view of the record could support" its ruling. *Colyer v. State*, 428 S.W.3d 117, 122 (Tex. Crim. App. 2014).

## V. *Analysis*

### A. Issue One: Lay Opinion Testimony

For lay opinion testimony to be admissible, the opinion must be (1) rationally based on the perception of the witness and (2) helpful to better understand the witness's testimony or to determine a fact issue. TEX. R. EVID. 701; *Fairow v. State*, 943 S.W.2d 895, 898 (Tex. Crim. App. 1997). The first requirement is composed of two parts. *Fairow*, 943 S.W.2d at 898. First, the witness must have personal knowledge of the events that inform the opinion, and second, the opinion must be rationally based on that knowledge. *Id.* at 898–900. As for the helpfulness requirement, no bright-line rule exists. Courts apply general relevance and balancing principles and consider the complexity of the

5

information from which the opinion was drawn to determine the helpfulness of the lay opinion. *See id.* at 900.

The State introduced the testimony of Honea, Cate, Girtz, and Enriquez to show that lay people who interacted with M.W. would know that M.W. had a mental disease or defect. The State argued that this evidence would help to answer the fact question of whether Appellant knew that M.W. had a mental disease or defect.

The witnesses testified to their own observations of M.W. and could rationally conclude, based on those observations, that M.W. had a mental disease or defect, which fulfilled the first requirement of Rule 701. *See* TEX. R. EVID. 701; *Fairow*, 943 S.W.2d at 898–900. The trial court found the testimony relevant to the elements in issue and found that they could help the jury to determine those issues because they were based on the witnesses' personal knowledge, which fulfilled the helpfulness requirement of Rule 701. *See* PENAL § 22.011(b)(4); TEX. R. EVID. 701; *Fairow*, 943 S.W.2d at 898–900. The trial court followed the principles in *Fairow* and admitted the testimony. *See* TEX. R. EVID. 701; *Fairow*, 943 S.W.2d at 898–900. Therefore, the trial court did not abuse its discretion by admitting the lay opinion testimony. *See Williams v. State*, 191 S.W.3d 242, 251 (Tex. App.—Austin 2006, no pet.) (noting that trial court had applied Rule 701 to police officer's lay opinion testimony that defendant did not appear to have a mental disease where police officer had observed and spoken with defendant); *see also McEntire v. State*, No. 05-02-00903-CR, 2003 WL 21350134, at *3 (Tex. App.—Dallas June 10, 2003, no pet.) (not designated for publication) (holding that employees of district attorney's office, who spoke with and observed complainant, could provide lay opinion testimony that described complaintant's mental and physical state). We overrule Appellant's first issue.

6

*B. Issue Two: "Predator" and "Prey" Language*

The State may pose hypothetical questions to an expert witness at trial where the hypothetical question is based on facts that are in evidence. *See McBride v. State*, 862 S.W.2d 600, 610 (Tex. Crim. App. 1993). The State may assume the facts in the question in accordance with its theory of the case. *Id.* at 610 n.20. "The mere asking of an improper question will not constitute reversible error unless the question results in obvious harm to the accused." *Brown v. State*, 692 S.W.2d. 497, 501 (Tex. Crim. App. 1985). We determine whether obvious harm occurred by looking "at the entire record with the surrounding circumstances, the nature of the evidence sought and its possible relationship to other testimony." *Guzmon v. State*, 697 S.W.2d 404, 408 (Tex. Crim. App. 1985). Convictions are rarely reversed because of an improper question. *Id.* Additionally, a trial court does not have the duty to sua sponte instruct the jury on evidentiary issues. *Oursbourn v. State*, 259 S.W.3d 159, 179 (Tex. Crim. App. 2008).

Dr. Wright testified on direct examination of a case study that involved a woman who was arrested for prostitution. Dr. Wright explained that, at the time of the arrest, the woman had an IQ "somewhere in the 50's." Dr. Wright testified that the woman subsequently lived in a group home, similar to M.W., and eventually approached "the 70 mark" because her situation had changed.

The State asked about this case study in cross-examination and whether people with mental diseases are "easy prey for people"; Dr. Wright agreed with the proposition. The State continued to ask Dr. Wright different hypothetical questions that involved different situations that would affect a person's IQ and ultimately a person's vulnerability. The State subsequently asked specific questions about M.W. and compared the hypothetical situations in its previous questions to the situations M.W. was in at Rock House and after she ran away from Rock House.

The State transitioned back to hypothetical questions and asked Dr. Wright whether a person in similar circumstances to M.W. could seem more vulnerable, and Dr. Wright agreed with that analysis. The State next asked Dr. Wright if predators were attracted to prey, and Appellant objected. The trial court overruled Appellant's objection, and the State then proceeded with discordant and disingenuous hypothetical questions about animals hunting other animals; the State also asked about individuals harming other people. The State again used the terms "predator" and "prey," and Appellant again objected. The trial court asked the State to rephrase its question, and the State's cross-examination continued without further objections.

The indictment required the State to prove that Appellant knew that M.W. had a mental disease or defect that, at the time of the sexual assault, prevented her from understanding the nature of the sexual assault or resisting it. Dr. Wright's testimony, on direct examination, showed that someone with a low IQ who is in a bad situation could improve his or her situation and could demonstrate a slightly higher IQ and that, in that improved circumstance, the person may not portray any mental deficiencies. The State's cross-examination elicited testimony from Dr. Wright that showed that someone in M.W.'s circumstances could appear to be more vulnerable. The State's use of hypothetical questions inquired whether certain individuals would target a vulnerable person.

Assuming, without deciding, that the trial court abused its discretion by overruling Appellant's objections to the State's use of the terms "predator" and "prey," especially with the State's hypothetical questions about animals hunting other animals, we hold that the error was, nonetheless, harmless in this particular case because the State used the terms infrequently, rephrased its questions when requested by the trial court, and in the remainder of its cross-examination elicited the same information without the use of those terms and without any subsequent

8

objections. *See Guzmon*, 697 S.W.2d at 408; *see, e.g.*, *Sherwinski v. State*, No. 05-90-00722-CR, 1991 WL 154767, at *8 (Tex. App.—Dallas Aug. 13, 1991, pet. ref'd) (not designated for publication) (holding that the trial court's overruling of defendant's objections to State's questions was harmless because of other evidence already before the jury). In addition, Appellant did not request any instructions when the State used those terms and did not object to the State's use of "predator" type language at closing argument. *See Oursbourn*, 259 S.W.3d at 179. We overrule Appellant's second issue.

### C. Issue Three: Motions for Mistrial and for New Trial

A witness's interference "with the normal proceedings of a trial will not result in reversible error unless the defendant shows that a reasonable probability [exists] that the conduct interfered with the jury's verdict." *Coble v. State*, 330 S.W.3d 253, 292 (Tex. Crim. App. 2010) (alteration in original) (quoting *Stahl v. State*, 749 S.W.2d 826, 829 (Tex. Crim. App. 1988)) (internal quotation mark omitted). A trial court's instructions are generally sufficient to cure any error, and we presume that the jury followed those instructions. *Id.*

#### 1. Motion for Mistrial

A mistrial is a device used to halt trial proceedings when error is so prejudicial that expenditure of further time and expense would be wasteful and futile. *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999). The trial court allowed M.W. to compose herself and come back a second day to continue with cross-examination without objection, and the trial court explained to the jury what happened. Additionally, the trial court instructed the jury to disregard any interruptions that M.W. caused each time Appellant requested an instruction.

Appellant has not shown that M.W.'s interruptions interfered with the jury's verdict. *See Coble*, 330 S.W.3d at 292. Appellant completed cross-examination, and the trial court repeatedly instructed the jury to disregard any interruptions,

9

which cured any error. *See id.* The trial court did not abuse its discretion by denying Appellant's request for a mistrial, and any interruptions were not so prejudicial as to make the remainder of the trial futile. *See Gamboa*, 296 S.W.3d at 580; *Ladd*, 3 S.W.3d at 567.

### 2. *Motion for New Trial*

A defendant must receive a new trial when the verdict is contrary to the law and the evidence. TEX. R. APP. P. 21.3(h). The jury is responsible for evaluating a witness's credibility, which it can determine from the witness's demeanor and conduct on the witness stand. *See Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997); *Meyer v. State*, 41 S.W. 632, 633 (Tex. Crim. App. 1897); *see, e.g.*, *Allen v. State*, No. 07-08-0029-CR, 2009 WL 1813138, at *3 (Tex. App.— Amarillo June 23, 2009, no pet.) (mem. op.) (not designated for publication) (explaining that factfinder found witnesses' testimony believable "based upon observations of each witnesses' demeanor"). We give almost total deference to the jury's findings that are based on credibility and demeanor. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007). A sexual assault victim's testimony alone provides sufficient evidence to support a conviction for sexual assault. *See* TEX. CODE CRIM. PROC. ANN. art. 38.07 (West Supp. 2014); *Villalon v. State*, 791 S.W.2d 130, 134 (Tex. Crim. App. 1990).

Appellant alleged either in his motion for new trial or at the hearing on his motion for new trial that M.W.'s disruptions, her refusal to answer questions, her "posture," and her "gestures of rolling eyes and some very dramatic sighs," "improperly and incurably influenced" the jury. Appellant asserts that these actions "would have unduly influenced [the jury] to not consider simply the testimony but to actually make a decision based out of sympathy or some other emotional response."

10

All of the additional conduct that the jury observed from M.W. while she occupied the witness stand contributed to the jury's evaluation of M.W.'s credibility. *See Guzman*, 955 S.W.2d at 89; *Meyer*, 41 S.W. at 633. We presume that the jury followed each of the trial court's instructions, but Appellant never objected or requested any instructions with regard to M.W.'s "posture" or other "gestures" that Appellant raised at the hearing on his motion for new trial. *See Coble*, 330 S.W.3d at 292.

Appellant has not shown that a reasonable probability exists that M.W.'s conduct interfered with the jury's verdict aside from its evaluation of her credibility, to which we give almost total deference. *See id.*; *Amador*, 221 S.W.3d at 673; *Guzman*, 955 S.W.2d at 89; *Meyer*, 41 S.W. at 633. Additionally, sufficient evidence existed in the form of M.W.'s testimony alone to convict Appellant, which would make the verdict not contrary to the law or the evidence. *See* CRIM. PROC. art. 38.07; TEX. R. APP. P. 21.3(h); *Villalon*, 791 S.W.2d at 134. The trial court did not abuse its discretion by denying Appellant's motion for new trial. *See Colyer*, 428 S.W.3d at 122; *Howell*, 175 S.W.3d at 792. We overrule Appellant's third issue.

## VI. *Conclusion*

After a review of the record, we hold that the trial court did not abuse its discretion when it admitted the lay opinion testimony or when it denied Appellant's motion for a mistrial and his subsequent motion for new trial. Although we question the appropriateness of the State's use of the terms "predator" and "prey," especially when juxtaposed against its hypothetical questions about animals hunting other animals, any error by the trial court in allowing such use was, in this particular case, harmless.

11

## VII. *This Court's Ruling*

We affirm the judgment of the trial court.

MIKE WILLSON

JUSTICE

April 2, 2015

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.