**Affirmed as Modified and Opinion Filed April 2, 2024**



In The
# Court of Appeals
## Fifth District of Texas at Dallas

**No. 05-22-01281-CR**

**No. 05-22-01288-CR**

**JULIO LOPEZ, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 291st Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause Nos. F21-00643-U; F20-22494-U**

## MEMORANDUM OPINION

Before Justices Carlyle, Goldstein, and Breedlove
Opinion by Justice Goldstein

Julio Lopez appeals his burglary of a habitation convictions. A jury convicted appellant and sentenced him to forty years' confinement in each case. In two issues, appellant argues the trial court erred in excusing two veniremembers before they were placed under oath, and the evidence is legally insufficient to support his conviction. In a single cross-issue, the State asks that we modify the judgment to reflect that appellant is required to pay only one court cost. As modified, we affirm the trial court's judgment.

# BACKGROUND

## VOIR DIRE

Appellant was charged by indictment with two counts of burglary of a habitation: The Mansions at Mercer Crossing (The Mansions) and The Luxe at Mercer Crossing (The Luxe). At trial in August 2022, the trial judge began by having the indictment in each case read aloud, to which appellant pled not guilty. The trial judge called in the venirepanel; introduced herself, her staff, the attorneys, and appellant to the members of the venire; and explained that she instructed "these people that I've introduced you to" to avoid the appearance of impropriety "not to have any conversations" with veniremembers "outside of normal pleasantries." The trial judge then proceeded to explain general housekeeping matters, including the trial schedule. Next, proceeding row by row, the trial judge asked the veniremembers if they had any "scheduling conflicts" "between now and Thursday between 9 a.m. and 4:30 p.m.," had a brief discussion with some members of the venire concerning potential conflicts, and made note. When the trial judge reached Panel Member 50, the following exchange occurred:

> THE COURT: Okay. We'll make note of that, and we'll do what we can to work around that. All right. Anyone else on the third row? 'Cause I know Mr. Puga is ready to tell me. Panel Member 50, for the record.
>
> VENIREPERSON: I understand just like 50 percent English.
>
> THE COURT: Okay. I will get to those disqualifications here in just one moment. Let me ask this, have you been able to follow along with what I've been saying?

VENIREPERSON: (Nonresponsive.)

THE COURT: All right. You are free to go. Thank you for letting us know. All right. I see another hand here. Panel Member -- is it 18? Yes.

The trial judge continued to inquire about scheduling conflicts, and a veniremember on the back row expressed difficulty speaking and understanding English:

THE COURT: All right. We'll make note of that, and we'll do what we can to work around it. Anyone else on that back row? All right. I see another hand over here. Is it Mr. Burns?

VENIREPERSON: Dupont.

THE COURT: Dupont. I'm sorry. Panel Member 60, for the record.

VENIREPERSON: I not speak English. I understand. When you speak too fast, no.

THE COURT: And how much have you been able to follow along, if you had to put a percentage on it? No? Okay. Let's see here. All right. You can claim – you're excused. You're free to go. Thank you. All right. I saw -- any other hands on the back row, scheduling conflicts?

When no more veniremembers raised a hand relative to scheduling conflicts, the trial judge administered "the oath to tell the truth" to the venirepanel, and voir dire proceeded. Appellant did not object to the release of the two panel members prior to the administration of the oath or when the trial court confirmed the jurors excused or disqualified, noted the parties' use of peremptory strikes, or empaneled the jury with one alternate juror.[1]

---

[1] The record reflects the trial court, outside the presence of the venirepanel, confirmed those jurors excused or disqualified, which included "Panel Member 50, disqualified for language" and "60, disqualified for language" to which neither the State nor appellant had objection. The trial court then identified the "strike zone through 73, with an alternate range of 74 through 77." The jury was comprised of members from the first 40 members of the venirepanel with the alternate being no. 74.

**TRIAL ON THE MERITS**

The State called four witnesses in its case in chief. Farmers Branch police detective Jeffery Turley testified he worked a case involving burglaries at The Luxe and The Mansions, two adjacent apartment complexes, in the summer of 2020. Turley met with management and obtained still photos from video surveillance at the complexes and screenshots from Facebook Marketplace showing items stolen from the complexes. As Turley later reviewed this information at his office, another detective walked by, saw the photos, and identified appellant as the man in the photos. The other detective was able to give Turley appellant's name and birthdate, which Turley used to obtain appellant's photo from an online law enforcement database. Appellant's database photo matched the photos from the surveillance and Facebook Marketplace, and Turley obtained a search warrant for appellant's Facebook account.

Facebook provided Turley with "[o]ver 17,000" pages that Turley's review, in conjunction with surveillance video and the apartment complexes' video footage, confirmed appellant was the one on surveillance video and on Facebook selling stolen items. Turley described the stolen items as appliances removed from multiple units including microwaves, refrigerators, dishwashers, and oven ranges. Turley was able to match from one Facebook photo the serial number on an appliance to an invoice from the apartment complex identifying the appliance as one that was stolen

from the apartment complex. Not all the stolen items posted on Facebook Marketplace "had their serial numbers posted on Facebook too."

Turley testified that the burglaries at the apartment complexes occurred between September 3 and September 10, 2020. Although the burglarized apartments were vacant, Turley charged appellant with burglary of a habitation because the apartment units were "designed for overnight accommodations," "fully furnished with appliances," and "readily available at any point in time for a resident to occupy them." "Everything – water, electricity, the ability to cook and store food. Everything was ready in these apartments." In the same building as the vacant burglarized apartments, there were other apartments that were occupied.

Christopher Reynolds testified he was The Luxe construction manager. When Reynolds learned that appliances were being stolen, he compiled a list of the serial numbers of all the property he believed had been stolen. Reynolds also reviewed appellant's Facebook Marketplace and saw ads showing "pictures of basically our apartments." It appeared to Reynolds that appellant had "taken pictures inside our apartment of the ranges and refrigerators and such." Reynolds identified a dishwasher, five-burner stove, and "multi-split unit" on appellant's Facebook for which Reynolds had serial numbers. On cross-examination, Reynolds testified that, "two to three weeks after we get the appliances, we will turn them over to the leasing site," and he had to have a certificate of occupancy "before they can go to leasing."

Reynolds testified that surveillance video showed an apartment being "hit," and "leasing had that entire building" where the apartment was located.

Robert Rood testified he was The Mansions project manager. Rood became aware of some burglaries at The Mansions and identified a range and a dishwasher that were stolen. Rood testified the serial number of the range stolen from The Mansions matched the serial number of a range appellant listed for sale on Facebook Marketplace.

At the conclusion of the guilt/innocence phase, the jury found appellant guilty of both burglary of a habitation offenses. Following a punishment hearing, the jury sentenced appellant to forty years' confinement in each case. This appeal followed.

## DISCUSSION

**Issue One: Appellant failed to preserve complaint for appellate review.**

In his first issue, appellant complains that:

> The trial court erred in excusing two veniremembers based on their answers to questions posed to them and answered before they were placed under oath as required under Tex. Code Crim. Proc. Ann. art. 35.02, and of Due Process and Due Course of Law under the 4th 5th & 14th Amendments to the U.S. Constitution and Article 1 sections 13 & 19 of Texas Constitution and section 1.04 of the Texas Code of Criminal Procedure.

Specifically, appellant argues the jury was illegally empaneled, seated, and sworn and some members were improperly excused because their answers to the court's initial questions were made when they were not under oath, and they were never

asked to ratify their previous answers after later receiving the oath as required under article 35.02 of the code of criminal procedure.

To preserve a complaint for appellate review, the party must timely object and specify the grounds that support the objection. TEX. R. APP. P. 33.1; *see also Guzmon v. State*, 697 S.W.2d 404, 413 (Tex. Crim. App. 1985); *Hawkins v. State*, 660 S.W.2d 65, 81 (Tex. Crim. App. 1983). Appellant failed to object at the time the veniremembers were excused or at the time the trial court identified the potential jurors, including the two at issue, that were excused or disqualified and specifically asked if either the State or defense had objections. Because appellant failed to object to the trial court's dismissal of two veniremembers at the time of dismissal or when given the opportunity to object, appellant has failed to preserve this issue for our review. *See id.*

A defendant has no right that any particular individual serve on the jury. *Jones v. State*, 982 S.W.2d 386, 393 (Tex. Crim. App. 1998). The defendant's only substantial right is that the jurors who do serve be qualified. *Id*. The defendant's rights go to those who serve, not to those who are excused. *Id.* In addition to his other shortcomings, appellant's argument neither attempts to demonstrate any lack of qualification on the part of those jurors who actually served, *see id*., nor challenges the disqualifications based upon language. On this record, in light of the opportunity and failure to object to the disqualification of two prospective jurors, we overrule appellant's first issue.

**Issue Two:  Evidence was legally sufficient to support conviction.**

In his second issue, appellant challenges the sufficiency of the evidence to support his conviction.  Specifically, appellant contends that:

> The State's evidence was insufficient to prove that the burglarized premises at the time of the burglary was a habitation within the statutory definition.  No rational juror could have found the elements of burglary of habitation proved beyond a reasonable doubt. Appellant is entitled to reversal of his conviction and rendering a judgment of acquittal.

We apply well-known standards when reviewing challenges to the legal sufficiency of the evidence.  *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (plurality op.).  We view all of the evidence in the light most favorable to the prosecution and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt.  *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017).

To prove appellant committed burglary of a habitation as charged, the State had to show appellant entered a "habitation" without the effective consent of the owner and attempted, committed, or intended to commit theft.  *See* TEX. PENAL CODE § 30.02(a). "Habitation" is defined by the penal code as "a structure or vehicle that is adapted for the overnight accommodation of persons," including "each separately secured or occupied portion of the structure or vehicle" and "each structure appurtenant to or connected with the structure or vehicle." *Id.* § 30.01(1).

Appellant argues that no rational juror could have found the elements of burglary of a habitation proved beyond a reasonable doubt. In making this argument, the only challenged element being "habitation, appellant asserts that the buildings from which the appliances were stolen were not "habitations" at the time of the burglaries because "no one had ever resided there, even overnight"; the apartments did not contain beds, furniture, or "belongings typical of a home"; and the apartments were not "occupant ready" because there was "no electricity or water – only the hookups."

"What makes a structure 'suitable' or 'not suitable' for overnight accommodation is a complex, subjective factual question fit for a jury's determination." *Salazar v. State*, 284 S.W.3d 874, 876–77 (Tex. Crim. App. 2009)[2] (quoting *Blankenship v. State*, 780 S.W.2d 198, 209–10 (Tex. Crim. App. 1989)). "The jury may look to a host of considerations such as the contents of the structure, including bedding, electricity, plumbing, or furniture; the jury may also look to and consider the type of structure and its typical use as a means for overnight accommodation." *Id.* In *Salazar*, although no one lived in the residence at issue, the owner was in the process of remodeling it for resale. *Id.* at 875. Similarly, the apartments at issue here were unoccupied but were "designed for overnight accommodations," "completely furnished" with appliances, wired for electricity,

---

[2] *Salazar* juxtaposes "building" and "habitation" in the hierarchy of properties. Buildings are typically commercial properties or government offices or perhaps professional places of employment. *Id.*

water accessible, and "readily available at any point in time for a resident to occupy them." Further, the jury heard evidence that the same building as the vacant burglarized apartments there were occupied apartments. "The determination whether a burglarized place is a 'building' or 'habitation' will be overturned on appeal only if the appellant can show that no reasonable trier of fact could have found the place to have been a habitation under the criteria above." *Blankenship*, 780 S.W.2d at 209-210. We conclude that, from this evidence, a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt, specifically the element that the apartments here were "habitations" within the meaning of penal code sections 30.02(a) and 30.01(1). *See* TEX. PENAL CODE §§ 30.02(a); 30.01(1); *Villa*, 514 S.W.3d at 232; *Salazar*, 284 S.W.3d at 875–77. We overrule appellant's second issue.

### State Cross Issue: Court Costs

In a single cross-issue, the State asks that we modify the judgment to reflect that appellant is required to pay only one court cost. This Court "has the power to correct and reform the judgment of the court below to make the record speak the truth when it has the necessary data and information to do so." *Asberry v. State*, 813 S.W.2d 526, 529 (Tex. App.—Dallas 1991, pet. ref'd); *accord Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993); *Abron v. State*, 997 S.W.2d 281, 282 (Tex. App.—Dallas 1998, pet. ref'd); *see also* TEX. R. APP. P. 43.2(b) (court of appeals may "modify the trial court's judgment and affirm it as modified").

Here, each judgment assessed court costs of $290. In a single criminal action in which a defendant is convicted of two or more offenses or of multiple counts of the same offense, the court may assess each court cost or fee only once against a defendant. TEX. CODE CRIM. PROC. art. 102.073(a). For purposes of this rule, a person convicted of two or more offenses in the same trial is convicted of those offenses in a single criminal action. *Shuler v. State*, 650 S.W.3d 683, 690 (Tex. App.—Dallas 2022, no pet.). Generally, a cost should be assessed in the case with the highest category offense but, when the convictions are for the same category of offense and the costs are the same, the costs should be assessed in the case with the lowest trial court case number. *Id.*; *see* TEX. CODE CRIM. PROC. art. § 102.073(b).

A review of the certified bill of costs for each case shows two identical fees totaling $290. Because the costs are duplicative and both convictions are for the same offense, court costs should have been assessed only in trial court cause number F20-22494-U (appellate cause number 05-22-01288-CR) the case which has the lower trial court case number. *See id.*

Accordingly, we modify the judgment in trial court cause number F21-00643-U (appellate cause number 05-22-01281-CR) to delete the court costs. We modify the bill of costs in trial court cause number F21-00643-U (appellate cause number 05-22-01281-CR) to delete all amounts assessed and reflect that the initial and remaining amounts due are $0. *See Contreras v. State*, No. 05-20-00186-CR, 2021

WL 6071640, at *8 (Tex. App.—Dallas Dec. 23, 2021, no pet.) (mem. op., not designated for publication).  We sustain the State's cross-issue.

As modified, we affirm the trial court's judgments.

<table>
<tr><td></td><td>/Bonnie Lee Goldstein//</td></tr>
<tr><td>221281f.u05</td><td>BONNIE LEE GOLDSTEIN</td></tr>
<tr><td>221288f.u05</td><td>JUSTICE</td></tr>
<tr><td>Do Not Publish</td><td></td></tr>
<tr><td>TEX. R. APP. P. 47.2(b)</td><td></td></tr>
</table>



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

JULIO LOPEZ, Appellant

No. 05-22-01281-CR          V.

THE STATE OF TEXAS, Appellee

On Appeal from the 291st Judicial District Court, Dallas County, Texas Trial Court Cause No. F21-00643-U. Opinion delivered by Justice Goldstein. Justices Carlyle and Breedlove participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

We **REMOVE** "$290" under "Court Costs" and **INSERT** "$0" in its place.

Additionally, the trial court's bill of costs is **MODIFIED** as follows:

We **REMOVE** the following charges: (i) Clerk's Fee $40.00, (ii) Jury Fee $1.00, (iii) Court House Sec. Fee $10.00, (iv) Cons. State Fees $185.00, (v) County Records Mgt. $25.00, (vi) Specialty Court $25.00, and State Jury Fee $4.00; and

We **REMOVE** the amount $290.00" from the entries for "Cost Amt.," "Total Amt.," "Balance Amt.," "Initial Amount Due," and "Remaining Amount Due" and **INSERT** "$0.00" for each entry.

As **REFORMED**, the judgment is **AFFIRMED**.

Judgment entered this 2nd day of April, 2024.



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

JULIO LOPEZ, Appellant

No. 05-22-01288-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 291st Judicial District Court, Dallas County, Texas Trial Court Cause No. F20-22494-U. Opinion delivered by Justice Goldstein. Justices Carlyle and Breedlove participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 2nd day of April, 2024.